CATHERINE G. CLARKE & others, trustees, *vs.* BOARD OF COLLEGIATE AUTHORITY.

Suffolk. February 8, 1951. — April 3, 1951.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Board of Collegiate Authority. Education. Veteran. Constitutional Law, Due process of law. Administrative Board or Officer.*

Action by the Board of Collegiate Authority under St. 1947, c. 534, § 1, on an application of an educational institution for the board's approval of it as an institution qualified and equipped to furnish education to veterans eligible to receive it under the Federal law does not

involve an adjudication of any personal right or right of property of the applicant, and therefore the applicant is not denied due process of law under the Federal Constitution or the Declaration of Rights of the Massachusetts Constitution through not being afforded a judicial hearing by the board prior to its decision on the application.

PETITION, filed in the Superior Court on July 27, 1950, for a writ of certiorari.

The case was heard by *Smith,* J.

*N. Gammans* of New York, for the petitioners.

*H. P. Fielding,* Assistant Attorney General, for the respondents.

WILLIAMS, J. This is a petition for a writ of certiorari wherein the petitioners pray that a decision of the respondents denying an application of the petitioners as trustees of Saint Benedict Center School to approve the school as a qualified educational institution under the provisions of St. 1947, c. 534, § 1, "be vacated and a proper determination substituted therefor." The case was heard in the Superior Court upon the petition and the return as extended. The trial judge ordered the petition dismissed and reported the case to this court. G. L. (Ter. Ed.) c. 213, § 1B, inserted by St. 1939, c. 257, § 1.

The "Servicemen's Readjustment Act of 1944," 58 U. S. Sts. at Large, 284, c. 268, as amended, provides for "vocational rehabilitation [of certain veterans] subject to the provisions and limitations of Veterans Regulation Numbered 1 (a), as amended, part VII, or . . . [for] education or training subject to the provisions and limitations of part VIII." Part VIII makes detailed provision for the education of veterans at various educational institutions throughout the country, and in § 4 states that "From time to time the Administrator [of veterans' affairs] shall secure from the appropriate agency of each State a list of the educational and training institutions (including industrial establishments), within such jurisdiction, which are qualified and equipped to furnish education or training . . . , which institutions, together with such additional ones as may be recognized, and approved by the Administrator, shall be

deemed qualified and approved to furnish education or training to such persons as shall enroll under this part." In this Commonwealth the Board of Collegiate Authority, created by St. 1943, c. 549, § 1, as part of the department of education and now consisting of fourteen members, was designated in 1944 by Executive Order No. 73 as the "appropriate agency" to aid in carrying out the foregoing regulation. Thereafter by St. 1947, c. 534, § 1, this board was "authorized and directed to compile and furnish to . . . [the administrator of veterans' affairs] a list of the educational and training institutions, including industrial establishments, within the commonwealth which are qualified and equipped to furnish any form of education or training, except apprentice training, to persons eligible to receive the same under" Part VIII. Section 8 of Part VIII provides that "No department, agency, or officer of the United States, in carrying out the provisions of this part, shall exercise any supervision or control, whatsoever, over any State educational agency . . . ." If the agency advises the administrator that an institution is qualified, it is "deemed qualified." If, however, the agency fails to find that the institution is qualified or reports lack of qualification, the administrator may in the exercise of his discretion recognize and approve the institution as qualified. It is not disputed that previous to 1950 the Saint Benedict Center School, of which the petitioners allege they are trustees, had received the approval of the board as a qualified educational institution; that on June 6, 1950, this approval expired; that on May 5, 1950, the petitioners requested the board to renew their approval and to certify such approval to the veterans' administration; and that on July 18, 1950, the petitioners' application was denied by the board.

It appears from the respondents' return as extended that after receipt of the petitioners' application dated May 5, 1950, the board sent an "expert" to the school who inquired into the educational program, conferred with the president of the school, talked with members of the teaching staff, attended some of the classes, and inspected the library and

other facilities. He rendered a "confidential" report to the board consisting only of findings of fact. Thereafter a regular meeting of the board was held on July 18, 1950, to which meeting the president and other representatives of the school were invited. The president, vice-president and registrar of the school attended the meeting. "Although there is no statutory requirement for it, they were given a hearing. The hearing lasted about an hour and a half. All members of the Board of Collegiate Authority were present. The parties who appeared in behalf of the school were given every opportunity to make a further presentation of facts, and in their presentation of facts they offered to answer any questions that the board might ask. The members of the Board of Collegiate Authority questioned them exhaustively as to many pertinent details." After the meeting the board deliberated on the application and voted unanimously against approval.

The burden is upon the petitioners to show that upon the face of the return the respondents have committed an error of law. *Tracht* v. *County Commissioners of Worcester*, 318 Mass. 681, 686–687. The return of the respondents is to be accepted as true concerning all matters within their jurisdiction. Averments of the petition not supported by the return of the respondents are to be disregarded. *Newcomb* v. *Board of Aldermen of Holyoke*, 271 Mass. 565, 567, and cases cited. *Scannell* v. *State Ballot Law Commission*, 324 Mass. 494, 502–503. It is the contention of the petitioners that they were not afforded a fair hearing before the board and one according with due process of law; that the board was influenced by secret information provided by the report of their "expert"; and that the facts stated in that report were not disclosed to the petitioners.

As the merits of the controversy will be settled by a determination of the right of the petitioners to a hearing conducted in accordance with usual judicial procedure, we do not pause to pass upon the procedural question as to whether this is a case for certiorari. See *Sampson* v. *Treasurer & Receiver General*, 282 Mass. 119, 121; *Webster*

v. *Alcoholic Beverages Control Commission*, 295 Mass. 572, 573.

The petitioners contend that they were entitled "to a full hearing, to present all the evidence in . . . [their] possession that was pertinent to the questions submitted, to learn and meet the claims of the opposing party, and to be heard upon the evidence adduced." *Boott Mills* v. *Board of Conciliation & Arbitration*, 311 Mass. 223, 227. *Burns* v. *Thomas Cook & Sons, Inc.* 317 Mass. 398, 402. Although it does not appear from the respondents' return that such a hearing was denied the petitioners, we assume for the purposes of this case that it was not afforded. No hearing of this character was provided by the Federal statute or by St. 1947, c. 534, § 1. The board was free to determine the qualifications of educational institutions unhampered by regulation as to method. See *Scannell* v. *State Ballot Law Commission*, 324 Mass. 494, 501. The right of the petitioners to a judicial hearing, therefore, depends on the due process clause of the Fourteenth Amendment to the United States Constitution and on the provisions of arts. 1, 10, and 12 of the Declaration of Rights of the Constitution of this Commonwealth. The rights assured under each of these constitutions are substantially the same. *Commonwealth* v. *Strauss*, 191 Mass. 545, 550. *Schaffer* v. *Leimberg*, 318 Mass. 396, 404, and cases cited. *Opinion of the Justices*, 267 Mass. 607, 610. One may not be deprived of a personal right or a right to property without due process of law. Due process of law may require a judicial hearing. But for one to be entitled to such a hearing by an administrative board it must appear that action by the board will affect his personal or property rights. It has been held that the benefits provided for veterans under the Servicemen's Readjustment Act "are mere gratuities and 'the grant of them creates no vested right.'" *Slocumb* v. *Gray*, 179 Fed. (2d) 31, 34. In *New York Technical Institute of Maryland, Inc.* v. *Limburg*, 87 Fed. Sup. 308, 312, where an approved educational institution was attempting to recover tuition at a rate in excess of that provided for by contract, the court said after citing

*Slocumb* v. *Gray,* "The plaintiff in this case has no greater
rights than the veteran himself would have. The benefits
are granted by the statute to the veterans and [are] not
created for the benefit of the school."

In our opinion the petitioners have no right to the ap-
proval of the board. Their position is similar to that of an
applicant for a license to conduct a business or ply a trade
where the privilege of so doing has been regulated under
the police power. In *Commonwealth* v. *Kinsley,* 133 Mass.
578, where a license to operate a pool table had been re-
voked, it was said at page 579, "Such a license is not a
contract, and a revocation of it does not deprive the de-
fendant of any property, immunity or privilege within the
meaning of these words in the Declaration of Rights, art. 12."
In *Burgess* v. *Mayor & Aldermen of Brockton,* 235 Mass. 95,
100, it was said that "A license . . . [to operate 'jitneys']
is a mere privilege or permission and in no sense a contract
or property." See also *Morley* v. *Police Commissioner of
Boston,* 261 Mass. 269, 277 (hackney license); *Roberto* v.
*Department of Public Utilities,* 262 Mass. 583, 588 (license
to operate motor vehicle as common carrier); *Revere* v.
*Riceman,* 280 Mass. 76, 82 (license to operate a slaughter-
ing establishment); *Liggett Drug Co. Inc.* v. *License Com-
missioners of North Adams,* 296 Mass. 41, 52 (common vict-
uallers' license). Likewise, there is no right to be appointed
to public office. In *Attorney General* v. *Mayor & Aldermen
of Northampton,* 143 Mass. 589, 590, it was said in reference
to the appointment of a police officer by the municipal au-
thorities, "It is an important duty, and, like most adminis-
trative duties, involves the exercise of judgment and dis-
cretion; but it is administrative, and not judicial, in its
character. No one has the right to be heard, and their de-
cision is not, within the meaning of the law, an adjudica-
tion or judicial determination of any question or of the
rights of any parties."

In our opinion action on the application of the petitioners
does not involve the adjudication of any personal right or
right of property. They were therefore not entitled to a

judicial hearing. [4] Nothing in the return indicates bad faith or arbitrary conduct on the part of the board. No error of law appears in the return.

*Order affirmed.*