JOHN J. MILLIGAN & another *vs.* BOARD OF REGISTRATION IN PHARMACY
(and a companion case[1]).

Suffolk. January 8, 1965. — February 8, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

State Administrative Procedure Act. Administrative Board or Officer. Quasi Judicial Tribunal. Constitutional Law, Due process of law, Police power, Right to hearing, Permit, Drug store. *Permit. Jurisdiction*, Judicial review of administrative decision. *Drug Store. Prohibition, Writ of.*

Discussion of the constitutional validity of restrictions on the carrying on of lawful occupations, and of constitutional right to a hearing on an application for a required permit to engage in such an occupation. [495–499]

An applicant to the Board of Registration in Pharmacy for a permit under G. L. c. 112, §§ 38, 39, to conduct a retail drug store has a constitutional right to a hearing before the board. [499]

A proceeding before the Board of Registration in Pharmacy upon an application to the board for a permit under G. L. c. 112, §§ 38, 39, to conduct a retail drug store is, in view of the applicant's constitutional right to a hearing by the board, an "adjudicatory proceeding" before an "agency" within § 1 of the State Administrative Procedure Act, G. L. c. 30A, and the board's decision is reviewable by the courts under § 14 of c. 30A. [499–500]

PETITION for review filed in the Superior Court on March 27, 1964.

---

[1] Board of Registration in Pharmacy *vs.* Superior Court, a petition for a writ of prohibition, hereinafter referred to as the prohibition case. The proceeding at which the prohibition case is directed has been here at an earlier stage. See *Cohen* v. *Board of Registration in Pharmacy*, 347 Mass. 96.

The respondent appealed from a final decree entered by *Macaulay*, J.

PETITION for a writ of prohibition filed in the Supreme Judicial Court for the county of Suffolk on November 12, 1964.

The case was reserved and reported by *Cutter, J.*, without decision.

*David Lee Turner & David Berman,* Assistant Attorneys General, for the Board of Registration in Pharmacy.

*David A. Rakov (Sumner Z. Kaplan* with him) for John J. Milligan & another.

*Harold Rosenwald (George W. Cashman* with him) for Martin Cohen & another.

*John F. Zamparelli,* for Massachusetts State Pharmaceutical Association, amicus curiae, submitted a brief.

CUTTER, J. In each of these two cases we must determine whether there may be review under the State Administrative Procedure Act (G. L. c. 30A, § 14, as amended through St. 1957, c. 193, § 1) of the board's denial of an application for a permit to conduct a retail drug store. See G. L. c. 112, § 38, as amended by St. 1934, c. 236,[2] and § 39, as amended through St. 1953, c. 281. Section 39 was amended after the hearing before the board on May 23, 1962, in the *Cohen* case (fn. 1), but before the board hearing on December 3, 1963, in the Milligan case. See St. 1962, c. 695, and St. 1963, c. 488. Portions of § 39, as amended in 1962, indicating changes from the earlier form of the section, are set out in the margin.[3]

---

[2] Section 38, as so amended, reads in part, "No store shall be kept open for the transaction of the retail drug business . . . unless it is registered with, and a permit therefor has been issued by, the board, as provided in the following section; provided, that . . . [the] words ['drug store,' 'pharmacy' . . . 'drugs'], or any of them, may, with the written permission of the board, be used with respect to a store not registered with, and not having a permit issued by, the board . . . if in the town, or voting precinct thereof, where such store is located there is no store so registered and having such a permit. . . . The word 'town', as used in this section, shall not include city."

[3] Section 39, as amended by St. 1962, c. 695, which became effective October 16, 1962, reads, "The board may, upon application . . . register a store for the transaction of the retail drug business, which store shall be independent of and separate from any business or store other than a retail drug

The first case is a petition, filed March 27, 1964, for review under c. 30A of the board's decision on February 27, 1964, denying an application by Milligan and Chester A. Baker, Inc. (Baker) for a permit to conduct a drug store at 520 Commonwealth Avenue, Boston. The application to the board was completed on May 9, 1963. Only after a petition for a writ of mandamus had been filed did the board assign the matter for a hearing on December 3, 1963. A request for the entry of a decree pro confesso on the petition for review was allowed on May 7, 1964. On July 3, 1964, the board filed a plea to the jurisdiction, which was then overruled. At the same time, a motion to vacate the decree pro confesso was denied. A final decree was entered that the board's decision "unreasonably delayed the issuance of the permit . . . in violation of . . . [Milligan's] constitutional rights . . . [and] was unsupported by substantial evidence . . . based on error of law and . . . otherwise arbitrary and an abuse of discretion." The board appealed. The foregoing facts are stated upon the basis of the pleadings.[4]

---

store and issue to such person as it deems qualified to conduct such store, a permit to keep it open; [A] *provided, however, that the board may deny such registration and refuse to issue such permit if, in its discretion, such store would be inconsistent with or opposed to the best interests of the public health, welfare or safety,* but no such registration shall be made or permit issued in the case of a corporation unless it shall appear to the satisfaction of the board that the management of *such drug store or pharmacy* [the drug business in such store] is in the hands of a registered pharmacist . . . " (emphasis supplied). The omitted final sentence of § 39, not here relevant, was amended by St. 1963, c. 488, also not here relevant. The bracketed letter [A] has been inserted for convenience of reference to the italicized words immediately following. The portions italicized in § 39, as above quoted, were added by the 1962 amendment which omitted the words there bracketed. These bracketed words appeared in § 39 as it read as amended through St. 1953, c. 281. The board exists under G. L. (Ter. Ed.) c. 13, § 22. Under G. L. c. 112, § 40 (as amended through St. 1937, c. 343, § 5), and § 42A (as amended by St. 1960, c. 634, § 2), the board after hearing may revoke any registration and permit for violation of certain statutes and of its own rules and regulations.

[4] Annexed to the petition for review was the complete record in another case of similar character, to which Baker was also a party. The Milligan petition alleged that this other case revealed a similar pattern of delay and behavior by or in behalf of the board. In that case, also, a judge of the Superior Court found that the board's decision (with respect to another drug store location sought to be registered by Baker and a different registered pharmacist) was "arbitrary or capricious and an abuse of discretion" and in various respects not based upon substantial evidence.

In the second case, the board sought in the county court a writ of prohibition (fn. 1) to prevent the Superior Court from considering a petition by one Cohen and another for review (under c. 30A) of the board's denial of a permit to conduct a retail drug store in Hingham. The single justice permitted Cohen and Hingham Pharmacy, Inc. to intervene and answer. A demurrer was filed in behalf of the Superior Court. It was stipulated that the Superior Court had denied the board's plea to the jurisdiction of that court to entertain a petition under c. 30A. A single justice reserved the matter, without decision, for the consideration of the full court, upon the pleadings, the board's rules, the record before the full court in the earlier Cohen case (see fn. 1), and a stipulation.[5]

1. General Laws c. 30A, § 1 (1), defines "[a]djudicatory proceeding" as "a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons *are required by constitutional right or by any provision of the General Laws* to be determined after opportunity for an agency hearing" (emphasis supplied). The board, at least in respect of proceedings under c. 112, §§ 40 and 42A (see fn. 3, last sentence), is expressly authorized to conduct adjudicatory proceedings, and thus is clearly an "[a]gency" within the definition of c. 30A, § 1 (2). It was so treated in the earlier Cohen case, see fn. 1. Chapter 30A, § 14, provides for "judicial review," in accordance with that section, of "a final decision of any agency *in an adjudicatory proceeding*" (emphasis supplied). The principal issue is whether the proceedings before the board were adjudicatory proceedings.

---

[5] It was represented that there are pending in the Superior Court petitions by Cohen and others for a writ of certiorari to review the board's decision and for a writ of mandamus to compel certain action by the board. On the view we take, there is no occasion for considering the scope of these remedies, especially that by certiorari (see DiMaggio v. Mystic Bldg. Wrecking Co. Inc. 340 Mass. 686, 691; Opinion of the Justices, 341 Mass. 760, 778), which, we assume, is not as restricted as was suggested at the arguments, especially in constitutional cases. See Shoppers' World, Inc. v. Assessors of Framingham, ante, 366, 376, fn. 9.

Chapter 112, §§ 38 and 39, do not expressly require a hearing in respect of an application for a drug store permit. The hearings actually granted by the board upon the Cohen and Milligan applications probably took place pursuant to Rule 12 of the board's rules, giving the board discretion to "require a hearing upon the merits of any application for . . . registration." It thus must be decided whether, in any event, an "opportunity for an agency hearing" upon such an application is "required by constitutional right" within the meaning of c. 30A, § 1 (1). If such a hearing is constitutionally necessary (see Fifth and Fourteenth Amendments of the Constitution of the United States, and the Constitution of Massachusetts, Declaration of Rights, arts. 1, 10, and 12), the proceeding is adjudicatory.

2. There is growing recognition (1) that administrative decisions on applications for licenses and permits to engage in a lawful occupation (either generally or at a particular place) directly affect the personal rights, property, or economic interests of the applicant, and (2) that fundamental considerations of fairness require such decisions (particularly those resting upon adjudications of facts) to be made objectively, under reasonable procedures, and with appropriate opportunity for judicial review. See Davis, Administrative Law Treatise (1958 ed., hereinafter Davis, op. cit.), §§ 7.01–7.20, revising an earlier article, The Requirement of a Trial-Type Hearing, 70 Harv. L. Rev. 193. The problem is important because of the increasingly large number of occupations now being subjected to administrative regulation. See Monaghan, The Constitution and Occupational Licensing in Massachusetts, 41 B. U. L. Rev. 157.

As Professor Davis has said (Davis, op. cit. § 7.02, p. 412), "Judicial opinions have not crystallized any basic principle to guide the determination of when the method of trial should be required, either by due process, or by interpretation of a statutory requirement of 'hearing,' or by a kind of common law that often seems to operate in this area, unanchored to any constitutional or statutory provision. The one observation to which the courts most

frequently pay lip service is that an agency can act legislatively but not judicially without a hearing, but that observation . . . is often unsatisfactory in various respects. The true principle is that a party who has a sufficient interest . . . at stake in a determination of governmental action should be entitled to an opportunity to know and to meet, with the weapons of rebuttal evidence, cross-examination, and argument, unfavorable evidence of adjudicative facts, except in the rare circumstance when some other interest, such as national security, justifies an overriding of the interest in fair hearing.'' It is apparent that the applicants in the present cases have a significant ''interest . . . at stake.''

The general problem has been dealt with principally in respect of an applicant's opportunity to engage at all in a particular occupation, or a particular aspect of an occupation. In *Goldsmith* v. *United States Bd. of Tax Appeals,* 270 U. S. 117, 123, it was stated that, since a citizen and certified public accountant was ''within the class of those entitled to be admitted to practice under the Board's rules, he should not have been rejected upon charges of his unfitness without giving him an opportunity by notice for hearing and answer. The rules adopted by the Board provide that 'the Board may in its discretion deny admission, suspend or disbar any person.' But this must be construed to mean the exercise of a discretion to be exercised after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process.'' *Willner* v. *Committee on Character and Fitness,* 373 U. S. 96, 104–105, held that one who had passed the New York bar examinations was entitled to notice of, and a hearing upon, the grounds for his rejection either before a bar committee or a court. The court said (p. 103) that it was concerned ''with what procedural due process requires if the license [to practise law] is to be withheld.'' After citing the *Goldsmith* case, the court went on to say, that ''procedural due process often requires confrontation and cross-examination of those whose word deprives a person

of his livelihood.''[6]   Somewhat comparable problems have
been presented in other cases without express decision of
the present issue.  See e.g. _Schware_ v. _Board of Bar Examiners_, 353 U. S. 232, 238–239 (where the evidence adduced
at a trial type hearing was held insufficient to justify exclusion of an applicant from opportunity to take bar examinations); _Re Application of Warren_, 149 Conn. 266, 274–276.[7]   See also _Bratton_ v. _Chandler_, 260 U. S. 110, 112–115;
_Konigsberg_ v. _State Bar of Calif._ 353 U. S. 252.

There may be nondiscriminatory (see _Hall-Omar Baking
Co._ v. _Commissioner of Labor & Indus._ 344 Mass. 695, 703–708) regulation of lawful private occupations where there
is a reasonable relation between the type of regulation undertaken and significant aspects of the public interest.   _Anton's of Reading, Inc._ v. _Reading_, 346 Mass. 575, 576–577.
See _McMurdo_ v. _Getter_, 298 Mass. 363, 365–370; _Silverman_
v. _Board of Registration in Optometry_, 344 Mass. 129, 133–135.   Thus, the Legislature may regulate pharmacists and
drug stores in a manner reasonably designed and appropriate to insure competence and diligence on the part of
pharmacists, cleanliness of premises, the purity and safety

---

[6] A generally similar result has been reached in decisions of other courts.
See _Standard Airlines, Inc._ v. _Civil Aeronautics Bd._ 177 F. 2d 18, 20–21
(Ct. App. D. C.); _Re Carter_, 192 F. 2d 15, 16–17 (Ct. App. D. C.); _Columbia
Auto Loan, Inc._ v. _Jordan_, 196 F. 2d 568, 570–572 (Ct. App. D. C.), requirement of due process satisfied by permitted de novo court hearing; _Homer_ v.
_Richmond_, 292 F. 2d 719, 724 (Ct. App. D. C.); _Smith_ v. _Foster_, 15 F. 2d
115, 116–117 (S. D. N. Y.); _Lewis_ v. _Grand Rapids_, 222 F. Supp. 349, 386–388 (W. D. Mich.); _Andrews_ v. _State Bd. of Registration_, 123 Cal. App.
2d 685, 694–696; _Gilchrist_ v. _Bierring_, 234 Iowa, 899, 907–917 (school of
cosmetology); _Perpente_ v. _Moss_, 293 N. Y. 325, 329.  See also _Philadelphia
Co._ v. _Securities & Exch. Commn._ 175 F. 2d 808, 816–819 (Ct. App. D. C.),
cert. granted and case dismd. as moot, 337 U. S 901; _First Natl. Bank_ v.
_First Natl. Bank_, 232 F. Supp. 725, 728–731 (E. D. N. C.).

[7] The revocation of licenses presents a somewhat analogous problem.  Some
recent decisions in other States have indicated that a hearing is necessary in
such cases.  See _Ratliff_ v. _Lampton_, 32 Cal. 2d 226, 230; _Beckler_ v. _Parsekian_,
36 N. J. 242, 256–258.  See also _State_ v. _Moseng_, 254 Minn. 263, 270–271;
_Wignall_ v. _Fletcher_, 303 N. Y. 435, 439–443.  These decisions are consistent
with the provisions regarding licenses in the State Administrative Procedure
Act, G. L. c. 30A, § 13 (as amended through St. 1962, c. 179), which supplant some of the preëxisting law discussed in MacCormack, Notice and Hearing Before Revocation of Business Licenses in Massachusetts, 27 B. U. L. Rev.
125.  Cf. _Wall_ v. _King_, 206 F. 2d 878, 883–884 (1st Cir.), cert. den. 346
U. S. 915.  Cf. also as to alcoholic beverage licenses, _Hornstein_ v. _Illinois
Liquor Control Commn._ 412 Ill. 365, 368–371.

of products sold, the prevention of the unlawful sale of narcotics, and similar health matters.

When regulation is attempted beyond such matters, more difficult questions of constitutional validity may arise concerning whether particular statutes, regulations, or policies, or their application in particular circumstances, bear a reasonable relation to significant aspects of the public interest.[8] Particularly is this so in respect of occupations other than those (for example, insurance, banking, public utility operation, and the traditional professions) most obviously appropriately subject to public regulation. If such other occupations are to be regulated in a manner which materially restricts qualified persons from engaging in them, it is of special importance that there be apparent the public grounds which constitutionally justify the interference with such persons' freedom of employment and business activity.

The test of "the constitutional validity of restrictions upon the carrying on of otherwise lawful occupations . . . is whether the act [or regulation] has a rational tendency to promote the safety, health, morals, and general welfare of the public. . . . 'The nature and extent of the public interest and of the exertion of the police power touching it are always a subject for judicial inquiry.'" See *Opinion of the Justices*, 322 Mass. 755, 760, in which the Senate was

---

[8] See e.g. *Liggett Co.* v. *Baldridge*, 278 U. S. 105, 111–114, which, despite what was said in *Daniel* v. *Family Sec. Life Ins. Co.* 336 U. S. 220, 224–225, still is authority for the proposition that drug store regulation to be valid must be reasonably related to the public interest. There has also been limitation of the holding (in another field) in *New State Ice Co.* v. *Liebmann*, 285 U. S. 262, 278–280. See *Breard* v. *Alexandria*, 341 U. S. 622, 629–633; *Williamson* v. *Lee Optical Co.* 348 U. S. 483, 486–488, 490–491. See also *Silverman* v. *Board of Registration in Optometry*, 344 Mass. 129, 133–135; *Boylan* v. *United States*, 310 F. 2d 493, 496–498 (9th Cir.), cert. den. 372 U. S. 935. Nevertheless, the later decisions, particularly in this Commonwealth, indicate that there will be careful judicial scrutiny of administrative regulatory activity tending to prevent qualified persons from engaging in an ordinary occupation to determine whether such regulatory activity has in fact any reasonable constitutional justification for the protection of the public rather than some merely private objective, such as protecting from new competition persons already engaged in the occupation. See *Massachusetts Soc. of Optometrists* v. *Waddick*, 340 Mass. 581, 584. See also *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health, ante*, 414, 420–426; Carpenter, Economic Due Process and the State Courts, 45 A. B. A. J. 1027.

advised that a proposed bill, prohibiting all agencies owning and operating cemeteries from engaging in the business of selling monuments, would be unconstitutional.  See also *Opinion of the Justices,* 300 Mass. 615; *Opinion of the Justices,* 337 Mass. 796 (regulation of the hours of barbers). These opinions assert that there may not be (337 Mass. 796, 798) "unreasonable interference with the pursuit of a vocation." See *Wyeth* v. *Cambridge Bd. of Health,* 200 Mass. 474, 478; *Lawrence* v. *Board of Registration in Medicine,* 239 Mass. 424, 428; *Simon* v. *Schwachman,* 301 Mass. 573, 575–576.

The effect of the board's denial of the registration permits in the two cases before us is clearly to preclude the applicants, although the individuals are qualified pharmacists, from the pursuit of a lawful vocation at places where they deem it advantageous for them to work.  Whether there is any constitutionally valid and adequate reason for denying the permits involves the determination by the board of the facts concerning each applicant and the place in which he wishes to carry on business.[9]  In such circumstances, a hearing is necessary in accordance with the principle underlying the *Goldsmith* case, 270 U. S. 117, 123, and the *Willner* case, 373 U. S. 96.  Procedural due process of law, based on ordinary concepts of fairness, requires that the applicants be given the opportunity for a hearing by the board before they may be denied permission to conduct a drug store at a place where to engage in that vocation would be lawful otherwise (as, for example, under local zoning provisions).

The proceeding, in any event, is adjudicatory within the meaning of G. L. c. 30A, § 1 (1), because opportunity for a

---

[9] We need not now determine whether the somewhat general and vague provisions of G. L. c. 112, § 39, both before or after its 1962 amendment (see § 39 at point [A] as quoted in fn. 3), provided sufficiently explicit standards for the guidance of the board.  If the statute prescribed adequate statutory standards (see *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 134; *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston,* 338 Mass. 199, 205; Davis, op. cit. § 2.07), it was, of course, the duty of the board to apply them to the facts found by it in a fair and impartial manner.  The existence of this duty in itself suggests the necessity of a hearing.

hearing was constitutionally required. We need not decide, therefore, whether the requirement of a hearing before the board should be implied (see *Demetropolos* v. *Commonwealth,* 342 Mass. 658, 660) in § 38 or § 39, by application of the principle that a statute must be construed to avoid not only the conclusion that it is unconstitutional but also even grave doubts upon that score. See *Worcester County Natl. Bank* v. *Commissioner of Banks,* 340 Mass. 695, 701; *Opinion of the Justices,* 341 Mass. 760, 785.

The result we reach carries out the broad, remedial purpose of the State Administrative Procedure Act (similar to that behind the comparable Federal statute; see *Wong Yang Sung* v. *McGrath,* 339 U. S. 33, 36–41, 48–51; *Heikkila* v. *Barber,* 345 U. S. 229, 232) to provide comprehensively for procedural due process in administrative proceedings. The result is also consistent with the authorities requiring appropriate judicial review of administrative decisions relating to somewhat analogous constitutional questions. See *Opinion of the Justices,* 251 Mass. 569, 610–611; *Lowell Gas Co.* v. *Department of Pub. Util.* 324 Mass. 80, 84–89; *Opinion of the Justices,* 328 Mass. 679, 682–691; *Salisbury Water Supply Co.* v. *Department of Pub. Util.* 344 Mass. 716, 718.

3. The board relies upon several distinguishable decisions which hold, in other circumstances, that there could be no judicial review under G. L. c. 30A, § 14, of administrative action of other boards. Two of these decisions involved applications by banks to establish branch offices. See *Natick Trust Co.* v. *Board of Bank Incorporation,* 337 Mass. 615, 616–617; *City Bank & Trust Co.* v. *Board of Bank Incorporation,* 346 Mass. 29, 30–32. The issue in such cases, we held in the *Natick* case (p. 617) "was a political question," viz. whether the community where the applicant sought to establish the branch had banking facilities which, in the opinion of the board were inadequate for the public convenience. Although questions of policy may necessarily be involved to some extent in the present applications (see Davis, op. cit. § 7.03), we think that the questions which this board had to decide were predominantly

adjudicative, viz. the objective ascertainment of facts about the applicants, their capacity, their reliability, their ability to conduct and finance a drug store, suitability of the premises, and like matters, in the light of any generally applicable, nondiscriminatory standards to be deduced from the statute. Cf. *Commonwealth* v. *Sisson,* 189 Mass. 247, 251–252; Davis, op. cit. §§ 7.02, 7.04, 7.06. In *Hayeck* v. *Metropolitan Dist. Commn.* 335 Mass. 372, 374–375, no question was presented concerning the denial of any constitutional right to a hearing or other constitutional right. *Springfield Hotel Assn. Inc.* v. *Alcoholic Beverages Control Commn.* 338 Mass. 699, 702, dealt with the transfer of a license for the sale of alcoholic beverages. See Davis, op. cit. § 7.19; Byse, Opportunity to be Heard in License Issuance, 101 U. of P. L. Rev. 57. The opinion pointed out (p. 701) that the "petitioners invoke no constitutional right," and stated (p. 702) that the applicable statute required no agency hearing. The transfer of the license was sustained. The objectors were competitors, not the transferor or the transferee of the license. The decision does not deal with the issue before us. In *Westland Housing Corp.* v. *Commissioner of Ins.* 346 Mass. 556, 557–558, this court merely remanded the case for further findings concerning (a) what the Commissioner of Insurance had done and (b) the parties' compliance with procedural requirements, so that the court might determine whether the commissioner had dealt with an adjudicatory matter. *Clarke* v. *Board of Collegiate Authy.* 327 Mass. 279, 283–285, was decided upon somewhat unusual facts in 1951, before the enactment of G. L. c. 30A by St. 1954, c. 681, § 1. The case (p. 283) involved benefits which had been described as "mere gratuities," and it may be distinguishable from the present cases on that ground. See Davis, op. cit. §§ 7.11, 7.19, 7.20. In any event, the *Clarke* case involved no denial of any aspect of an applicant's opportunity to engage in a vocation, for which he had been trained, of the general type dealt with in the *Willner* decision and similar cases, which seem to make irrelevant for present purposes whether the

interest of the applicant is a personal or a property right. Other cases (e.g. *Morley* v. *Police Commr. of Boston,* 261 Mass. 269, 277, and *Roberto* v. *Department of Pub. Util.* 262 Mass. 583, 588) are also not controlling in the light of the *Willner* case and similar decisions. See Davis, op. cit. §§ 7.11, 7.12, 7.20.

4.  What has been said disposes of both the Milligan case and the prohibition case (fn. 1). The Superior Court had jurisdiction of the petition for review in the Milligan case and has jurisdiction of the petition which was before us in the earlier *Cohen* case and is still pending before the Superior Court.

In the Milligan case the board makes no argument on the merits or propriety of the final decree. See Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698, as amended on November 5, 1962, 345 Mass. 787. The board's sole argument was on the matter of jurisdiction to entertain the petition for review.

5.  In Milligan *vs.* Board of Registration in Pharmacy, the entry is to be "Final decree affirmed." In Board of Registration in Pharmacy *vs.* Superior Court, the entry will be "Petition dismissed. Costs are to be in the discretion of the single justice."

*So ordered.*