**Althea TEDFORD et al, Plaintiff**
vs.
**MASSACHUSETTS HOUSING
FINANCE AGENCY, Defendant**

**No. 12902**

Housing Court Department
of the Trial Court
Commonwealth of Massachusetts

**November 24, 1981**

Paul R. Collier, George A. O'Toole, Jr., David H. Gibbs, counsel for plaintiff.
Raymond J. Brassard, Brian M. Hurley, counsel for defendant.

## ORDER

Plaintiffs, purportedly a class though not yet certified, are residents of an apartment complex located in East Boston, Massachusetts known as Landfall West. The complex was financed by MHFA pursuant to its Enabling Act (Chapter 708 of the Acts of 1966, sometimes referred to as 23A App., where the text of the Act appears). The complex is owned by a Massachusetts limited partnership and the general partners are defendants, William Langelier and Paul Donahue. Prior to the latter part of 1979, the complex was managed by Weston Associates. The development has been managed since early 1980 by Peabody Properties. Defendant Philip Roderick is president of Peabody Properties. The development is now managed by The Finch Group, Inc.

The complex receives the benefit of interest reduction subsidies from the Department of Housing and Urban Development ("HUD") pursuant to Section 236 of the National Housing Act, 12 U.S.C. § 1715z-1. Approximately 40 percent of the tenants receive rental subsidies from HUD pursuant to the 236 program. Six tenants receive 707 rent supplement and three receive Section 8 assistance. As a result of the HUD involvement, MHFA and the owners of the complex are subject to the regulations issued by HUD in connection with the 236 program. In many instances certain actions (e.g., rent increases) taken with respect to the complex require HUD approval.

In addition to the federal regulatory scheme, the owners of the project are subject to a Regulatory Agreement required by MHFA as part of the loan or contract documents. The Regulatory Agreement governs rent levels, tenant selection, distribution of complex income and other aspects of the complex. The tenants are not a party to this Regulatory Agreement.

For a variety of reasons, the complex has experienced severe financial difficulties as have many projects under the 236 program. In the spring of 1978, Paul Donahue, a defendant in this action brought suit in U.S. District Court against MHFA (Civil Action No. 78-882 Mc) alleging, inter alia, that MHFA unfairly deprived the owners of necessary rent increases. Since late fall of 1978 the owners have been in default of their obligations under the mortgage. As a result of the default by the owners, MHFA took

possession of the complex in October, 1979 for the purpose of foreclosure. MHFA commenced proceedings in the Massachusetts Land Court seeking permission to exercise the power of sale set forth in the mortgage. Since early 1980. MHFA and the owners of the project have made efforts to remedy or "work out" the financial difficulties of the complex. As a result of the negotiations, the MHFA Board of Directors approved a "work out" proposed on November 4, 1980. This proposal included a mortgage modification and a mortgage increase. Although the Board received information in the financial package which suggested the need for rent increases, the Board did not receive a rent increase request nor did it vote on a rent increase in November 1980. Since November 1980, MHFA and the owners have attempted to implement the work out approved in principle on November 4, 1980. As part of the ordinary rent increase process, Peabody Properties submitted a rent increase proposal to MHFA which included a conversion of domestic electricity, not including heat, to individual metering. The proposal, after review by MHFA staff and Management Review Committee, was approved by the Board on September 1, 1981. The rent increase was scheduled to take effect, after notice, on November 1, 1981.

The tenants at Landfall West Apartments seek and order from this Court enjoining implementation of a rent increase and tenant metering of electricity approved by the Massachusetts Housing Finance Agency on September 1, 1981, together with an injunction prohibiting implementation of an underlying mortgage increase approved by the MHFA in November of 1980. Landfall West Apartments is a 59 unit project located at 401 Border Street in East Boston, financed and constructed for the elderly and handicapped. Occupancy at Landfall West was originally restricted to the elderly and handicapped. Since 1978, MHFA, the owners and managers, have admitted non-elderly, non-handicapped tenants. In the spring of 1981, the agency and the owners obtained a waiver of the elderly and handicapped designation from the Department of Housing and Urban Development in order to admit small families.

The Court agrees with the plaintiffs that at the time of preliminary relief, it is appropriate for the Court to afford relief to the entire class, even where class certification has not yet occurred, in order to maintain the **status quo** in a meaningful fashion. **Coalition for Basic Human Needs v. Edward J. King et al,** 654 F.2d. 838, at 843 fn. 2 (1st Cir. 1981). The Court also finds that the Housing Court Department, Boston Division, has jurisdiction over this case. The legislature enacted language in 1979, St. 1979, c. 72, § 3 to overrule appellate decisions which denied the Housing Court jurisdiction over certain cases. The legislature recognized first that it could not allow the peculiar situation where the Hampden County Housing Court lacked jurisdiction over G.L.c. 93A, due to the technical interpretation that chapter 93A was deleted from the Hampden County Housing Court's jurisdiction when that Court was created and which legislative history was not applicable to the Boston Housing Court; thus, the anomalous situation arose that the Boston Housing Court Division possessed chapter 93A jurisdiction where the Hampden County Housing Court did not. But more importantly, the legislature wanted to clearly establish that the Housing Court jurisdiction was not limited to landlord-tenant relationships but extended to all residential housing problems which affected the health, safety or welfare of the occupants or owners.

In order to justify the issuance of a preliminary injunction, a moving party must meet the threshold requirement that it has a substantial likelihood of success on the merits. **Packing Industries Group v. Cheney;** 1980 Mass. Adv. Sh. 1189, 1197. In addition, the moving party must demonstrate that he will suffer irreparable harm in the absence of injunctive relief. And then, **Cheney, Id.,** states, "If the judge is convinced that failure to

issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not solely the amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits."

The Court confesses, that absent a showing of lack of due process, this judge will normally not issue equitable relief in circumstances where an agency has decided that a rent increase is appropriate. If an agency has complied with due process, this Court will sustain that agency's decision if there is substantial evidence on the record as a whole to justify the decision. But therein lies the problem. The plaintiff's irreparable harm is not the fact that financially he will be impacted, but that he will be financially impacted by a method which allegedly deprived him of due process.

The tenant contends that the landlord's requested rent increase is a response to an agency policy to have all of its financed-projects converted to individual electricity metering; this policy being illegally adopted and implemented, necessitates the rent adjustment decision be deemed invalid. Secondly, the plaintiff contends that the procedure used by the agency to consider the landlord's request was defective because those proceedings were a sham due to an **ultra vires** arrangement and its notice and hearings procedures deprived the tenants of a meaningfull opportunity to participate in the agency's information-collecting and decision-making process. The last contention of the plaintiff is that the agency's decision is invalid because the agency has no standards or criteria for evaluating information pertaining to the request or for reaching a decision on the request and pertinent information; lacking standards, such decision making is by definition arbitrary and thus illegal. The plaintiff contends that the MHFA is

covered by the State Administrative Procedure Act (G.L.c. 30A).

The defendant MHFA by counsel has stated previously in open court that the agency does have internal guidelines by which it approves or denies rent increases. Counsel for MHFA previously asserted that there was no policy to convert all of its financed-projects to individual unit electricity metering and that there is a project-by-project examination as to the feasibility of such conversion. MHFA further contends that it affords due process to the tenants, but argues that the MHFA is not an agency, and therefore is not governed by G.L.c. 30A.

The State Administrative Procedure Act was promulgated to ensure regularity in the operation of state agencies, envisioning public and affected party's input into their development and enforcement of agency policy, including the structuring of the discretion entrusted to them by the legislature. The Act applies to all state agencies; defining "agency" broadly as "any department, board, commission, division or authority of the state government or subdivision of any of the foregoing or official of the state government, authorized by law to make regulations or to conduct adjudicatory proceedings" and excluding certain specific agencies not relevant here. The MHFA is defined by G.L.c. 23A App. § 1-3 as being "placed in the Department of Community Affairs a body politic and corporate to be known as the Massachusetts Housing Finance Agency, which shall be known as the Massachusetts Housing Finance Agency, which shall not be subject to the supervision or control of the Department of Community Affairs or of any department, commission, board, bureau or agency of the Commonwealth except to the extent and in the manner provided in this act. The MHFA is hereby constituted a public instrumentality and the exercise by the MHFA of the powers conferred by this act shall be deemed and held to be the performance of an essential governmental function." The MHFA consists of state officials and five persons appointed

by the governor. G.L.c. 23A App. § 1-6 allows the MHFA to make rental determinations for each housing unit pursuant to regulations adopted by it. Unlike **Milligan v. Board of Registration in Pharmacy,** 348 Mass. 491 (1956), the MHFA is not expressly authorized to conduct adjudicatory proceedings. But the statute is disjunctive. Thus, if the MHFA is authorized by law to make regulations, then that body politic, which consists of officials of the state government and being placed in the Department of Community Affairs, is an agency governed by G.L.c. 30A. While MHFA may contend that the regulations may be only for internal management, the Court finds that the regulations required by statute relate to standards by which the MHFA shall implement or interpret the law enforced or administered by it. Moreover, the fact that the MHFA is not expressly authorized to conduct adjudicatory proceedings does not mean then that the Board is free from any obligation to provide adjudicatory hearings.

The proceeding to be reviewed was admittedly not conducted as an adjudicatory proceeding within the meaning of G.L.c. 30A. Even if MHFA admitted that it was an agency, the question that the Court would have to address is whether the "kind of hearing which was held was not 'required by constitutional rights or by any provision of the General Law' and the decision which was made was not one 'in which the legal rights, duties or privileges of specifically named persons' were determined. G.L.c. 30A § 1(1)." See, **Miller v. Alcoholic Beverages Control Commission,** 340 Mass. 33 (1959). G.L.c. 30A, § 1(1) defines "adjudicatory proceeding" as "a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing." "It thus must be decided in any event, whether an 'opportuntiy for an agency hearing' upon such an application is 'required by con-stitutional right' within the meaning of c.

30A, § 1(1). If such a hearing is constitutionally necessary (see Fifth and Fourteenth Amendments of the Constitution of the United States, and the Constitution of Massachusetts, Declaration of Rights, art. 1-10 and 12), the proceeding is adjudicatory." **Milligan v. Board of Registration in Pharmacy, supra,** at 495. Justice Cutter proceeded to quote from Professor Davis in **Milligan v. Board of Registration in Pharmacy,** at 496 explaining that "The true principle is that a party who has a sufficient interest...at stake in a determination of governmental action should be entitled to an opportunity to know and to meet, with weapons of rebuttal evidence, cross-examination, and argument, unfavorable evidence of adjudicative facts, except in the rare circumstance when some other interest, such as national security, justifies an overriding of the interest in fair hearing."

The foundation case of the 1970's on the requirement of an opportunity to be heard is **Goldberg v. Kelly,** 397 U.S. 254 (1970). The United States Supreme Court has eroded the woou n distinction between rights and privileges that once seemed to govern the applicability of the due process rights. The tendency of the United States Supreme Court is toward a balancing of private interest by necessitating particular procedural safeguards against the cost to the agency of providing them. The Court recognizes that due process is a vague standard. But this is precisely why the Commonwealth of Massachusetts has enacted its own State Administrative Procedure Act to provide precise guidelines. The Court recognizes that agencies may take in certain circumstances, summary administrative actions in advance of a full hearing, to wit: if a contagion is spending, or a harmful medicinal preparation is being sold to the public, summary administrative action in advance of hearing is appropriate. The Court does not perceive the need for drastic administrative action in the case at bar. There may well be a financial justification for the procedure followed by the MHFA: the Court recognizes the delicate

nature of the MHFA in these financially unstable times. The Court does not want to fiscally sabotage the MHFA. The MHFA is an extraordinary institution, which should be strengthened and not hampered by unnecessary regulations. But if this Court finds that the MHFA is an agency, and that the plaintiff is a party who has a sufficient interest or right at stake in a determination of governmental action, this Court cannot deny the plaintiff a fair and meaningful opportunity for an adjudicative hearing. Many cases sustain administrative action on the ground that the ability to obtain **de novo** judicial review supplies sufficient administrative procedural safeguards. See, **Hager v. Reclamation District,** 111 U.S. 709 (1884). There are even cases which hold that administrative procedural deficiencies can be compensated for by opportunity for a judicial review which is not **de novo.** See, **Bowles v. Willingham,** 321 U.S. 503 (1944). But even where a **de novo** review is obtainable, it still does not obviate the need for a proper, legal hearing before the MHFA, where the legislature by enacting G.L.c. 30A did not contemplate that the failure of an agency to hold a proper hearing could be corrected by appeal. In this age of discarding administrative regulations, the MHFA could probably obtain a legislative exclusion from the provision of G.L.c. 30A. This Court cannot exempt the MHFA from G.L.c. 30A.

The MHFA has seen fit to comply with the State Administrative Procedure Act insofar as it has published regulations in the Code of Massachusetts Regulations regarding the administration of the state interest subisidy program. The meter-conversion policy is a regulation under the Administrative Procedure Act requiring formal promulgation proceedings prior to its adoption. Counsel for MHFA previously argued that the agency has no policy on meter-conversion and that decision on conversions are made on an **ad hoc** basis; that approach clearly signifies that there is a policy under which the MHFA operates in allowing conversion. Landlords and tenants must know upon what policy or standard this conversion is allowed. The MHFA's failure to articulate publicly any standards or criteria for the evaluation of information pertinent to rent adjustment considerations and for reaching a decision on an increase could well render its rent adjustment decisions as being arbitrary and illegal. The fact that there are internal standards or criteria makes it that much easier for the MHFA to publish regulations for the guidance of both landlords and tenants. Counsel for MHFA acknowledges that there are several cases pending in the Commonwealth of Massachusetts in which both landlords and tenants are arguing that the rent level set by the board was unfair. How is a court to judge whether the actions of an agency should be sustained unless regulations are established before the controversy has arisen so that the courts, as well as the parties, can determine whether there is substantial evidence on the record as a whole to sustain the decision. This Court does not want to intrude upon the MHFA nor does it wish to play the role of MHFA. The financial community can better determine whether the MHFA's procedures are financially viable, if there are defined guidelines.

The tenants have a right of access to the agency's Management Policy Review Committee. That right derives from the MHFA's provision for such access in its own Handbook. That access is not meaningful if the tenants are unaware of the criteria upon which rent increases are approved and are unable to refute in an intelligent manner the landlord's justification for that rent increase. Without a full evidentiary hearing, this Court cannot determine whether the procedures followed by the defendant MHFA, in approving the mortgage increase, prejudice the limited hearing that the tenants received. In any event if the tenants are entitled to an adjudicatory proceeding, it becomes irrelevant whether the hearing that was provided to the tenants, offered

any opportunity to contest the rent increases.

This Court does not address whether the MHFA has to provide adjudicatory proceedings every time that it is engaged in a decision making process. See, **Savings & Loan League of Conn., Inc. et al v. Conn. CHFA et al,** May 26, 1981, 62 Conn. L.J., No. 48 at 1. In a memorandum and remand order in **Mass. Union of Public Housing Tenants, Inc. et al. v. Landrieu et al,** 656 F.2d. 899 (D.C. Cir. 1981), (attached hereto) the federal court explained that the Department of Housing and Urban Development's promulgation of a regulation requiring public housing projects utilizing central utility metering system to consider, in the interest of energy conservation, conversion to individual utility meters, was defective in not providing a reasonable explanation of the agency's assumption that individual metering produces a 25-35% savings in fuel used for space heating.

The Court is asked to recognize the MHFA's attempt to advance the public welfare by allowing it freedom to pursue social goals limited only by the need to avoid escessive losses. However, the Court recognizes that the tenants, in the case at bar, have an interest in housing they can afford. The low-income tenant's interest may not be directly jeopardized each time the MHFA approves a rent increase; the increase may be small and the MHFA's assumption of paying any money owed by the low-income tenant which amounts to more than 25% of his or her income lessens the impact. The government action thus poses a less serious threat to the private interest of low-income tenant than the termination of welfare benefits in **Goldberg v. Kelley, supra.** The Court though is not blind. The economic realities of today limit the opportunity of moderate income tenants to decent housing. Eviction can well result from the inability to pay a small rent increase. The fact that a tenant may be eligible for low-income status does not mean that the tenant will obtain that status. In today's society, tenants in regulated developments have a greater incentive to understand their landlord's financial condition and are more likely to appreciate the intricacies of project management and the state of the economy. The procedures sought by the tenants may well place a significant burden of the relationship between the landlord and the MHFA. Adjudicative hearings may delay economically necessary rent increases and discourage private investors; but the MHFA must also remember that a primary factor in establishing the MHFA housing financing scheme was low income families will obtain substantial benefits from each project. See, **MHFA v. New England Merchants National Bank,** 356 Mass. 202 (1969).

Furthermore, unlike the National Housing Act wherein rents in such housing are to be regulated, but only "in such manner as in the opinion of the Secretary will effectuate the purpose of this section." 12 U.S.C. § 1715(d)(3). The Massachusetts legislature gave no such discretion to the MHFA. G.L.c. 23A App. § 1-6(a) provides that "The MHFA shall, pursuant to regulations adopted by it, make the following rental determinations for each housing unity located in a project to which MHFA has made a mortgage loan hereunder:..." Therfore, the MHFA by virtue of the above mechanism is limited by regulations in establishing rent level, and it is not for this Court to say whether plaintiff's longterm interest may not be well served by a judicially imposed system of review of all rent increases where the legislature has not provided an exemption, expressly or impliedly, for the MHFA. The Court notes that the decision of **MHFA v. New England Merchants National Bank, Ibid** at 213, fn. 12 specifically noted the changes in the legislation before it. "More adequate provisions governing rental levels and tenant selection have been substituted for unsatisfactory provisions of the original 1966 bill. An unduly broad delegation of power to MHFA contained in old § 7 no longer appears." In

looking at that original 1966 bill, the Court notes that the MHFA was imbued with a greater latitude of discretion in setting rent schedules. See, **Opinion of the Justices,** 351 Mass. 716 (1966). In the present case, the MHFA is not accorded the widest latitude of procedural choice.

The MHFA's assertion that the tenants have no legitimate claim of entitlement which justifies the assertion that they have a due process right to participate in that process rests on a distinction without a difference. Evictions because of inability to pay higher rent is no different from eviction for having a dog in violation of a project rule. See, **Escalera v. New York City Housing Authority,** 425 F.2d 853, 862 (2nd Cir.), **cert denied,** 400 U.S. 853 (1970). This is not to say that the legislature is constrained in determining what due process rights are to be afforded to affected persons. If the legislature exempted the MHFA from G.L.c. 30A, clearly the tenants would not have a right to judicial review. The legislature is free to determine the appropriateness of judicial review in these circumstances. The legislature is free to determine that the courts are ill-equipped to superintend economic and managerial decisions of the kind involved here. The tenants may still be entitled to a hearing which ought to be afforded, with minimal procedural fairness, by a notice of the proposed rent increase and a meaningful hearing at which they would have the opportunity to present their complaints, if any, of the unreasonableness of the proposed rents. Under this procedure an inflexible full-scale hearing would not be required. The MHFA has in effect recognized that the tenants are entitled to meaningful participation, even though the agency maintains that it is not governed by the provisions of G.L.c. 30A. The agency recognizes that decent housing in this Commonwealth is just as basic and integral a part of life and liberty as opportunities for employment. The urgency of the housing crisis is known by all and denied by none. The relationship between shelter, poverty, urban problems and life and liberty is very clear.

While these tenants could not reasonably expect that they were to be immunized from rent increases, they could legitimately expect that they would have an opportunity to participate in a decision-making process under G.L.c. 30A where G.L.c. 23A App. has not con-

sole discretion of the MHFA. Adding legislatively prescribed restrictions on the MHFA. Just as a judge cannot play Solomon, so too is the MHFA denied from playing that role for though Solomon could be wise, he could also be arbitrary.

The Court finds that the MHFA is an agency for the purpose of this hearing in that the plaintiff is a party who has a sufficient interest or right at stake in a determination of governmental action. The Court finds that the plaintiff is entitled to an adjudicative hearing in order to contest properly the proposed rent increase and meter conversion. The Court finds that the plaintiff's due process rights to an adjudicative hearing have been violated. The fact remains that after an adjudicative hearing, the decision of the MHFA may well be the same. And the Court, if it finds substantial evidence on the record as a whole, will sustain that decision.

Thus, the assessment of the parties' lawful rights at this preliminary stage of the proceeding may not correspond to the final judgement. Also, pursuant to **Packaging Industries v. Cheney, supra,** at 1196, it was held that the Court "should seek to minimize the 'harm that final relief cannot redress,'...by creating or preserving, insofar as possible, a state of affairs such that after the full trial, a meaningful decision may be rendered for either party." The defendant's argument that regulation-making procedures would impede its ability to meet its urgent responsibilities for responding promptly to changing financial conditions, is a policy argument more appropriately addressed to the legislature. It also overlooks the provisions of G.L.c. 30A, §

2(3) for adopting emergency regulations. The Court is mindful that the owner may well be entitled to a rent increase. The Court does not have the plaintiff's lease before it. But unless the lease provides for an automatic means of transferring utility service, or unless there is an exemption from G.L.c. 186, § 14, this Court lawfully and unilaterally transfer the responsibility for payment of the utility service to the occupant without that occupant's consent. See, also, **Williams v. Seder,** 306 Mass. 134 (1940) Thus, even if the MHFA decides that there is substantial evidence on the record as a whole to justify that decision, the landlord still would be unable to change the utility service without the consent of the tenant.

The Court is aware of clauses that automatically increase rent upon certain objective occurrences, however, most leases provide who is responsible for utility services. That responsibility cannot be transferred unilaterally. Thus if the landlord cannot implement legally the meter conversion decision of the MHFA, the landlord cannot claim to suffer irreparable harm if the Court preliminarily enjoined the meter conversion.

The Court agrees that controlling Supreme Judicial Court precedents hold that rates, prices or other financial standards set without lawful regulations are legally invalid and must be set aside by the Court when the case is heard on the merits. See, **Keeland Liquor, Inc. v. Alcoholic Beverages Control Commission,** 345 Mass. 28 (1962); **Massachusetts General Hospital v. Commissioner of Public Welfare,** 346 Mass. 739 (1964); **White's Liquor Mart, Inc. v. Alcoholic Beverages Control Commission,** 350 Mass. 11 (1965). The Court here is asked only to make an interlocutory decision and because this case is one of a first impression, the Court wants to preserve as much of the **status quo** as possible before final judgment enters. The Court anticipates an appeal of this interlocutory order. While the existence of an interlocutory appeal does not divest the trial court of jurisdiction to proceed with the action on the merits, the Court would prefer guidance from the appellate courts before final judgment enters in this case. The Court at this stage is under obligation to preserve, insofar as possible, a state of affairs that a meaningful decision may be rendered for either party. It may well be that the administrative agency may be able to correct certain deficiencies before this Court hears and determines the case on the merits.

At this point in time the Court declines to rule on an injunction prohibiting implementation of an underlying mortgage increase approved by the MHFA. The Court does not perceive that the tenants would normally have standing to attack MHFA approval of the mortgage. Under the Federal system, section 4 of the Administrative Procedure Act, 5 U.S.C. § 553(a), exempts matters relating to public loans, benefits, and contracts from the statutory requirements for rule-making. Section 5 of the Administrative Procedure Act, 5 U.S.C. § 554, applies only when there is an adjudication, a term which implies a greater direct impact on individual interests than in the normal contingecies. The Court agrees with the MHFA that it is impractical to assert that the tenants at MHFA developments have a right to participate in "work out" negotiations. But to the extent that the "work out" negotiations involve rent increases, the MHFA concedes that tenants have a reasonable opportunity to participate.

The opportunity to be heard cannot be transparent. Without a hearing on the merits the Court cannot say whether the mortgage process taints the agency's determination on the mortgage. Agencies that have investigatory and adjudicatory powers are careful that the investigative process does not taint the adjudicators. The tenants have a right at adjudicative hearings on the rent increases to attack any prior committment on a mortgage increase which impacts their financial obligation. The final decision on the mortgage should perhaps be made con-

comitantly with the rent increase decision.

If the Court is not satisfied that the hearing afforded to the tenants was fair and meaningful, the Court could vacate the rent increase decision; it would not be necessary to invalidate the mortgage increase. While the MHFA denies that the approval of a rent increase was done to settle a lawsuit, the Court can draw certain inferences in the absence of countervailing evidence.

The Court appreciates the fact that the Agency's approval of the financial package was designed to keep this development viable. The Court understands that the MHFA is operating with a desire to provide housing to those citizens who desperately need help. The Court does not want to jeopardize the viability of this development or of MHFA's ability to sell notes and bonds which finance new and needed housing. The Court must confess an ambivalence in this case. The danger of the unknown looms heavily upon the Court's decision-making process. The presence of realities that immediately impact upon the tenants who are elderly or handicapped also presses upon the Court. These tenants are locked in to this complex. See, **Tai on Luck Corp. v. Circota d/b/a 70 Bayard Street Pharmacy**, 346 N.Y.S. 2d, 438, **appeal dism.** 362 N.Y.S. 2d. 400, **motion den.** N.Y.S. 2d. 173, on remand 331 N.Y.S. 2d. 250 (1972). See also, **Commonwealth v. Decotis**, 366 Mass. 234 (1974) as to locked-in tenants.

Absent a full evidentiary hearing, the Court will not issue an injunction prohibiting implementation of the underlying mortgage increase approved by MHFA in November 1980 because the rent increases will not impact the tenants with the greatest eed due to the MHFA guarantee that low income tenants will not have to expend more than 25% of their income for rent and also because the tenants have an adequate remedy at law.

Because the rent increase will not impact the tenants with the greatest need due to the MHFA guarantee that low income tenants will not have to expend more than 25% of their income for rent and also because the tenants have an adequate remedy at law, the Court will not issue a preliminary injunction enjoining the rent increase. As this case is one of a first impression, even if this Court had issued a preliminary injunction enjoining the rent increase, the tenants would be ordered to deposit the increased rent with the Court pending final adjudication.

The risk of harm lies in favor of the tenants on the meter conversion plan. That plan produces an automatic transfer of the responsibility of providing electricity. Because the conversion policy was not properly adopted, the decision permitting the conversion is invalid. The Court will issue a preliminary injunction on the meter conversion.

The Court notes, that even if the MHFA determinations were invalid **ad initio**, this opinion is limited in its application to those cases within this Court's jurisdiction and to those cases which have not reached a final judgment either because they were pending before the administrative body or court or because appellate review has not been exhausted. This decision shall have no retroactive effect. See, **Sniffin v. Prudential Ins. Co. of America**, 1981 Mass. App. Ct. Adv. Sh. 813, 319.

Plaintiff's motion for preliminary injunction was heard by the Court on argument and submission of documents by all parties and whereupon, the Court hereby allows said motion in part and orders as follows:

(A) The effect of defendant MHFA's decision allowing the meter-conversion is hereby stayed, suspended and preliminarily enjoined pending a final hearing on the merits;

(B) The issuance of appropriate notice, pursuant to G.L.c. 30A, for (and the convening of) public hearings on the adoption of regulations concerning (i) whether to adopt an agency policy of converting MHFA's projects to in-

dividual apartment electric metering, and the factors which would enter into allowing such conversion in an individual complex and (ii) criteria for evaluating and deciding rent adjustment requests. If the agency finds that immediate adoption of a regulation is necessary for the preservation of the public health, safety or general welfare, and that observance of the requirements of notice and public hearing would be contrary to the public interest, the agency may dispense with such requirements and adopt the regulation or amendment as an emergency regulation pursuant to G.L.c. 30 § 2(3);

(c) the reconvening of public hearings on the rent adjustment request of the defendant owner following the completion of the regulatory process described above.

The agency should be careful, if it enacts a meter conversion regulation, to disclose the grounds upon which it acts and to substantiate the same. Further, there should be supportive data showing that individual metering produces a substantial savings, otherwise a change in building metering would probably be permanent and difficult to undo if the agency is wrong in its analysis.

The Court in remanding the matter back to the MHFA has confidence that the agency has the expertise and the competence to enact the necessary regulations and conduct the proper hearings with all due dispatch, minimizing the harm both to the landlord and to the tenants by this delay. The Court realizes that the defendant may well appeal this decision and it is prayed that the appellate tribunals act expeditiously to decide this issue.

· **E. George Daher, Chief Justice**

### JUDGMENT

This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia and was argued by counsel. On consideration of the foregoing, it is

ORDERED AND ADJUDGED by this court, that the judgment of the District Court on appeal herein is hereby vacated and the case is remanded to the District Court with instructions to remand the case to the agency for appropriate further proceedings, for the reasons set forth in the attached memorandum.

· Per Curiam
For the Court

**George A. Fisher, Clerk**

### MEMORANDUM

At issue in this case is a regulation (Part 865) promulgated by the United States Department of Housing and Urban Development (HUD) requiring public housing projects utilizing central utility metering systems to consider, in the interest of energy conservation, conversion to individual utility meters. The regulation requires each such housing authority to conduct a cost-benefit analysis concerning meter conversion, and establishes a presumption that conversion will yield specified levels of savings in fuel consumption. Petitioners are a coalition of public housing tenant organizations, three tenants of public housing subject to the regulation, and a membership environmental organization. They argue that the savings assumed for space heating fuel use, 25-35%, is without substantiation in the record, and will lead to the allocation of scarce HUD funds for meter conversions that are not truly cost-effective.

The contested regulation is the product of informal rulemaking, which is reviewable under the arbitrary and capricious standard. **National Association of Food Chains, Inc. v. ICC**, 535 F.2d 1308, 1313-14 (D.C. Cir. 1976). Although the scope of our review is narrow, it requires that the grounds upon which the agency acted must be clearly disclosed in, and substantiated by, the record. **Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.**, 419 U.S. 281, 285 (1974).

The rulemaking record on which Part 865 is based consists of a 1962 HUD bulletin (LR-11) and three supplemental documents. None of these studies pro-

vides statistical data showing that meter conversion produces 25-35% savings in fuel used for space heating. The data in LR-11 and its two revisions indicate that individual metering produces a 25% savings in fuel used for lighting, refrigeration and cooking. HUD has provided no explanation as to how this data can be extrapolated to predict commensurate savings in fuel used for space heating. The questions raised by this gap in the administrative record are heightened by data in the third supplemental study (the MRI study) which compares consumption of electricity for space heating under master and individual meters and shows savings resulting from individual meters of only 15%. Thus, on the rulemaking record before us we are unable to determine the correctness of the assumed 25-35% reduction.

As we noted previously, no meaningful judicial review can occur where an agency has failed to give an adequate explanation of the connection between the record before it and the choice it has made. **National Welfare Rights Organization v. Mathews,** 533 F.2d 637, 648 (D.C. Cir. 1976). Our conclusion that the rulemaking record is inadequate for judicial review requires that the agency consider the matter further. **Camp v. Pitts,** 411 U.S. 138 (1973); **Asarco, Inc. v. United States Environmental Protection Agency,** 616 F.2d 1153 (9th Cir. 1980). Such consideration may require supplementation of the present administrative record so as to provide a reasoned basis for the agency's action.

The judgment of the District Court granting summary judgment and dismissing the complaint is to be vacated, and the case remanded to the District Court with instructions to remand the case to the agency for such further proceedings as may be necessary to enable the agency to provide a reasoned explanation of its assumption that individual metering produces a 25-35% savings in fuel used for space heating.