NEW YORK CENTRAL RAILROAD COMPANY *vs.* DEPARTMENT
OF PUBLIC WORKS.

Suffolk.    April 2, 1968. — May 9, 1968.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Railroad,* Grade crossing.  *Way,* Public: grade crossing.  *State Admin-
istrative Procedure Act.*

A proceeding before the Department of Public Works on a petition by
   a freight railroad under G. L. c. 160, §§ 102, 245, to establish a grade
   crossing on a State highway was an adjudicatory proceeding in which
   the procedure before the department was governed by the State
   Administrative Procedure Act, G. L. c. 30A.  [335]
In a proceeding by a freight railroad under G. L. c. 30A, § 14, to review
   a decision by the Department of Public Works denying the railroad's
   petition under G. L. c. 160, §§ 102, 245, to establish a grade crossing
   on a State highway, it was held that conclusions of the department,
   that the requested grade crossing, which would enable the railroad to
   extend its tracks to a manufacturing plant, "would pose a threat to
   the safety of the traveling public [and] . . . the public necessity
   did not require the granting of the permission," were adequately
   based on substantial facts, including facts found as to the traffic use
   and hazards involved, the effect of a grade crossing on Federal grants,
   and an alternative use of the proposed plant site.  [332–333, 335–336]

PETITION for review filed in the Superior Court on April
14, 1967.

The case was heard by *Thompson,* J., on demurrer and
on the merits.

*Howard M. Miller,* Assistant Attorney General (*Walter H.
Mayo, III,* Assistant Attorney General, with him), for the
respondent.

*Richard J. Ferriter,* for New York Central Railroad
(*Julian T. Hargraves,* for the intervener Fermo Bianchi, &
*Francis E. Sullivan,* for the intervener Town of Natick, with
him).

WHITTEMORE, J.  The railroad brought a petition under
G. L. c. 30A, § 14, to review a decision of the Department of
Public Works of March 15, 1967, reaffirmed April 11, 1967,

refusing to approve the railroad's petition to establish a grade crossing on Route 135, a State highway in Natick, so as to extend a track to land to be used by the Gillette Company for manufacturing purposes. The Gillette Company intervened. In reaffirming the decision the department stated that "the requested grade crossing would pose a threat to the safety of the traveling public [and] . . . the public necessity did not require the granting of the permission." This conclusion was based on findings of the department in respect of the use of the way, the effect of a grade crossing on Federal grants, the hazards involved and alternative use of the proposed plant site.[1]

The department demurred on the ground that the decision was not made in adjudicatory proceedings. The demurrer was overruled and the case was heard in the Superior Court on the record of the proceedings before the department, and a stipulation that certain "evidence recited" in the findings but not introduced before the depart-

---

[1] The findings included: "The construction of the proposed spur line would create a drainage problem and it would necessitate the installation of a drainage system to intercept the surface water. [Route #135 is an avenue within a corridor of travel to which the Department of Public Works invites and directs motorists for the most efficient travel through the corridor. At a State numbered highway such as Route #135 the public can travel at a higher rate of speed than on most town roads.] The average weekday traffic volume count for the locus is 14,929 vehicles (Exhibit #6). [The projected traffic volume for the locus a 24-hour period in 1990 is 27,000. Route #135 being on the Federal Aid Primary system must not only meet the Department of Massachusetts Public Works new rigid safety requirements but also those of Federal Bureau of Public Roads. The Federal Bureau of Public Roads not only discourages railroad crossings at grade but provides each year certain limited funds specifically for use in elimination of these crossings at grade. The Federal design requirements for a road carrying 27,000 vehicle volume is a four-lane highway and should it become necessary to improve the highway for a four-lane highway the Federal Government would refuse to participate in the improvement unless an overpass or underpass is constructed at the locus. In which event, the construction of the overpass or underpass would result in a great expense to the Commonwealth.] No matter what stringent restrictions are placed upon the use of the proposed railroad crossing at level grade, it cannot be denied that the crossing would constitute a greater hazard to the motoring public than the locus without the crossing. The Public Works Commission finds that the proposed railroad crossing at level grade would constitute a hazard to the motoring public which is a threat to the public safety. On the question of public necessity, the Public Works Commission also considered that the petition is for a proposed crossing to a proposed plant and the non adjudication of public necessity by it would not preclude the present owner from finding other comparable uses for his premises nor will it preclude the prospective owner from finding other location which will not require the crossing of a numbered route." As to the bracketed matter, see text.

ment would be introduced if the matter were remanded to the department. This material is enclosed in inserted brackets in fn. 1. It was also stipulated that no further evidence would be presented on remand. The final decree set aside the decision of the department and ordered that it grant the railroad its written consent to cross Route 135.

By G. L. c. 30A, § 1, an adjudicatory proceeding is "a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing."

General Laws c. 160, § 102 (as amended by St. 1941, c. 496, § 1), provides: "If a railroad is laid out across a public way, . . . the department of public works in the case of a state highway, upon the application of the railroad corporation, or of the board of aldermen of the city or selectmen of the town where the crossing is situated, after notice to all persons interested and a hearing, may adjudge that public necessity requires the crossing at the same level, and may, if the department [of public utilities] also consents in writing to such crossing at the same level, make a decree specially to authorize and require the corporation so to construct its railroad, in such manner as shall be prescribed in the decree, and the . . . department of public works . . . may modify such decree or may revoke it at any time before the construction of the railroad at such crossing."

Section 245 of c. 160 (as amended through St. 1941, c. 496, § 2), provides in part: "No such [freight] railroad shall . . . be constructed across or upon a public way or traveled place without the consent of . . . the department of public works in the case of a state highway, nor except in a' place and manner approved by them. If . . . the department of public works in the case of a state highway, consent, they shall from time to time make such regulations relative to motive power, rate of speed, and time and manner of using the railroad over and upon such way or traveled

place, as in their judgment the public safety and convenience require, and they may order such changes to be made in the track as are rendered necessary by the alteration or repair of such way. The provisions of this chapter and . . . [c. 159] relative to the crossing of ways and traveled places by railroad corporations shall apply to such railroad, and to the person constructing or operating the same."

· The requirements of an adjudicatory proceeding are met. Under the statutes the department determines whether the railroad shall have the privilege of exercising its right to cross the way by doing so at grade. *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 542 (abandonment of rail service). *Hamilton* v. *Department of Pub. Util.* 346 Mass. 130, 137 (location of electric power line). *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, 592–593 (exemption from local zoning by-law). *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 495–502 (permit to conduct a drugstore). The decision of the department is not primarily legislative or political as in *Hayeck* v. *Metropolitan Dist. Commn.* 335 Mass. 372, 374–375 (no right of any kind to access to the abutting way), and in *Natick Trust Co.* v. *Board of Bank Incorporation,* 337 Mass. 615, 616–617, and *City Bank & Trust Co.* v. *Board of Bank Incorporation,* 346 Mass. 29, 30–32 (both cases deal with permission to locate a branch bank office). Whether a right may be exercised on a particular way contemplated by the statute is an issue in which the applicant and the intervener have a significant interest. See Davis, Administrative Law Treatise [1958 ed.] § 7.02, cited in the *Milligan* case, *supra,* 348 Mass. at 495–496.

Apart from the issue of what may be deemed to be in evidence, discussed below, the findings of the department show a decision adequately based on substantial facts (G. L. c. 30A, § 14 [8] [e]). The decision is not "[a]rbitrary or capricious [or] an abuse of discretion" (§ 14 [8] [g]). The findings are a sufficient compliance with the requirement of § 11 (8) that "[t]he decision shall be accompanied by a statement of reasons for the decision, including deter-

mination of each issue of fact or law necessary to the decision."

A large measure of judgment and discretion necessarily enters into a determination of public necessity in respect of a grade crossing. The record does not require the conclusion that the general public interest against a grade crossing was outweighed by the interests of the railroad, and of the present and proposed landowners and of the town in acquiring a new industry. We do not overlook the testimony that the use of the crossing by the railroad would be in such a manner as to suggest that accidents would be unlikely to occur. But a showing that the risk of accident was small [2] did not require that consent be given. Federal policy against grade crossings on aided State highways was a relevant consideration. The statute does not contemplate that the judgment of the court be substituted for that of the department. *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 558.

The facts set out in the findings that were not introduced in evidence appear to be in large part if not entirely facts of which c. 30A, § 11 (5), permits judicial notice to be taken ("any fact which may be judicially noticed by the courts, and . . . general, technical or scientific facts within their specialized knowledge"). Section 11 (5), however, affords "[p]arties . . . an opportunity to contest the facts so noticed," and, of course, they may contest other facts put in evidence. The opportunity not having been afforded as to the facts referred to in the stipulation, those facts were not properly before the department at the time of the decision. It follows that the findings based thereon are "unsupported by substantial evidence" (§ 14 [8] [e]). The parties having agreed, however, that, on remand, all the

---

[2] That the department may have so believed is suggested by statements in a letter of March 30, 1967, from the department to the Natick selectmen which is attached to the petition: "However, the Department does not interpose objection to the crossing provided that the town of Natick accept as a town road the state highway section running from the . . . town line . . . approximately a distance of 2.1 miles. And further provided that no crossing of said section of road will be made prior to transfer of ownership."

omitted facts and no others would be introduced, they have, in effect, made these facts available to support the decision and have foregone the right to contest them by presenting further evidence. True, the parties have not had an opportunity to argue to the department in respect of their significance. But the facts are relevant and the most unlikely possibility that the department would on reargument take a different view of their significance does not warrant further proceedings.

The interlocutory decree overruling the demurrer is affirmed. The final decree is reversed. A final decree is to enter affirming the decision of the department.

*So ordered.*