8 Mass. App. Ct. 575    575

Cast Iron Soil Pipe Institute v. Board of State Examiners of Plumbers & Gas Fitters.

CAST IRON SOIL PIPE INSTITUTE vs. BOARD OF STATE
EXAMINERS OF PLUMBERS AND GAS FITTERS[1] & another.[2]

Suffolk.    May 18, 1979. — October 31, 1979.

Present: KEVILLE, BROWN, & PERRETTA, JJ.

Administrative Law, Regulations, Adjudicatory proceeding, Legislative proceeding. License. Due Process of Law, Right to hearing. Board of State Examiners of Plumbers and Gas Fitters.

The Board of State Examiners of Plumbers and Gas Fitters was not required to hold an adjudicatory hearing pursuant to G. L. c. 30A, §§ 10-14, prior to adopting an amendment to the Massachusetts Plumbing Code which rescinded approval of a certain type of clamp for use with a hubless system for joining cast iron soil pipe segments [583-587]; nor was the board constitutionally required to hold an adjudicatory hearing even though the economic interests of the patent holder and manufacturers of the clamps may have been adversely affected [587-588]; nor was an adjudicatory hearing required prior to a further decision of the board which merely established the date on which the amendment was to take effect [588-589].

There was no requirement that action of the Board of State Examiners of Plumbers and Gas Fitters in adopting amendments to the Massachusetts Plumbing Code, which was legislative in nature rather than adjudicatory, be supported by substantial evidence. [589]

CIVIL ACTION commenced in the Superior Court on October 11, 1977.

---

[1] In 1977 the Board of State Examiners of Plumbers and the Gas Regulatory Board were combined to form the Board of State Examiners of Plumbers and Gas Fitters. See St. 1977, c. 843, § 1, amending G. L. c. 13, § 36, and St. 1977, c. 843, § 2, repealing G. L. c. 25, §§ 12H-12L. Section 12 of St. 1977, c. 843, makes clear that the statute is not to "be construed as abolishing said board of state examiners of plumbers" or "as creating a new board."

[2] The board's executive secretary. See St. 1977, c. 843, § 13.

The case was heard by *Silverman, J.,* a District Court judge sitting under statutory authority.

*James J. Myers (William A. Zucker* with him) for the plaintiff.

*Donald K. Stern,* Assistant Attorney General, for the Board of State Examiners of Plumbers and Gas Fitters & another.

*Robert E. Dickinson (Leo A. Reed* with him) for Massachusetts Association of Plumbing, Heating and Cooling Contractors, Inc., & others, amici curiae.

BROWN, J. By this action seeking declaratory and injunctive relief the plaintiff Cast Iron Soil Pipe Institute challenges the validity of two amendments to the Massachusetts Plumbing Code (code[3]) adopted by the defendant Board of State Examiners of Plumbers and Gas Fitters (board) affecting the use in Massachusetts of so-called hubless cast iron soil pipe. The trial judge made findings of fact pursuant to Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), and ordered that judgment enter declaring the challenged amendments valid. The plaintiff appeals from the ensuing judgment. We affirm.

We summarize the facts. Cast iron soil pipe is used in plumbing systems for drainage of waste water, sewage, and other waste, which flows through the pipe by force of gravity rather than under pressure. It is also used to drain rain water from building roofs. Cast iron soil pipe is manufactured in segments. The traditional method for joining these segments together requires that each segment be manufactured with one end (the bell or hub) larger in diameter than the remainder of that segment (the spigot). The spigot end of one segment is inserted into the bell or hub of the other segment and the joint thus created is sealed with lead and oakum.

The more recently developed, so called "hubless," system for joining cast iron soil pipe segments together with

---

[3] The code was promulgated pursuant to G. L. c. 142, § 13, as amended through St. 1975, c. 706, § 286.

one another or with other fittings, as its name suggests, does not rely upon each pipe segment's having a hub or bell; rather the segments are of relatively uniform diameter. A cylindrical gasket made of neoprene (a synthetic rubber), which fits over or around the joint between two pipe segments, seals the joint, making it fluid tight. A stainless steel clamp, also cylindrical, which fits over or around the gasket and is tightened by means of bolt screws, holds the two pipe segments together by means of friction.

The plaintiff holds a patent[4] controlling the design of certain stainless steel clamps which are manufactured for use in the hubless system and which bear the trademark "CI No-Hub." The plaintiff does not itself manufacture those clamps but licenses manufacturers of cast iron soil pipe and fittings to make and sell those clamps. The licensees are considered members of the plaintiff institute. Whether others who are not licensees of the plaintiff manufactured stainless steel clamps for use in the hubless system prior to the actions of the board here challenged is not clear from the record before us.[5]

Before the adoption of the challenged amendments to the code the code provisions relating to the use of the hubless cast iron soil pipe system were as follows. Subparagraph 6.1.1 ("Minimum Standards") of Section 6, provided, "All materials, systems, and equipment used in the construction, installation, alteration, repair, replacement, or removal of any plumbing or drainage system or part thereof, shall conform at least to the standards listed in this Section and be approved by the Board" with certain exceptions not material for present purposes. And subparagraph 6.1.3 ("Standards and Approval") provided, "A material shall be considered approved if it

---

[4] The record appendix does not disclose the exact nature of the plaintiff's patent.

[5] It does appear that a nonlicensee of the plaintiff manufactured a cast iron clamp.

578                                                      8 Mass. App. Ct. 575

Cast Iron Soil Pipe Institute *v.* Board of State Examiners of Plumbers & Gas Fitters.

meets one or more of the standards listed in Table 6.1.3, Standards for Plumbing Materials and has been designated by the Board for specific use, or uses, in this Section or other sections of this Code."[6]

The standards appearing in Table 6.1.3 were established by fourteen different organizations, including such governmental bodies as the National Bureau of Standards of the United States Department of Commerce and the Federal Supply Service, Standards Division, of the General Services Administration as well as by such private organizations as the American National Standards Institute, the American Society for Testing & Materials, and the plaintiff. The table identified the materials, which must meet certain of these standards, by generic type without differentiation among the products of particular manufacturers (e.g. "Ferrous Pipe, Fittings and Valves" or "Steel Pipe, Stainless"). The standard listed in Table 6.1.3 for "Hubless Cast Iron Sanitary System With No-Hub System Fittings" was "CISPI [Cast Iron Soil Pipe Institute] 301-71." The record appendix does not disclose the content of that standard.

Paragraph 6.2 ("Allowable Materials") designated the materials approved for specific uses. Subparagraph 6.2.6 designated at least eight types of pipe and fittings approved for use in "storm and sanitary" systems "below ground" and subparagraph 6.2.7 of the same paragraph

---

[6] The code may now be found at 11 Code Mass. Regs., Title 248, § 2.00 et seq. (1978). Some time after the adoption of the challenged amendments, the sections of the code were renumbered. The following conversion table indicates the new numbers of the relevant sections as amended:

| Old section numbers | New section numbers |
| --- | --- |
| 6.1.1 | 2.06(1)(a) |
| 6.1.3 | 2.06(1)(c) |
| Table 6.1.3 | Table 1 |
| 6.2 | 2.06(2) |
| 6.2.6 | 2.06(2)(f) |
| 6.2.7 | 2.06(2)(g) |
| 6.2.7(c) | 2.06(2)(g)3 |

designated at least eleven types of pipe and fittings approved for similar use "above ground." The types were differentiated primarily generically rather than by the products of particular manufacturers. Part (b) of subparagraph 6.2.6 designated for use below ground and part (c) of subparagraph 6.2.7 designated for use above ground "Hubless cast iron soil pipe and fittings, joined with 300 series[7] stainless steel clamp, as conforms to CISPI Standard." Whether stainless steel clamps manufactured by nonlicensees of the plaintiff conformed to these provisions of the code and were accordingly sold and used in Massachusetts is not entirely clear from the record before us;[8] we shall assume in favor of the plaintiff that its licensees were the only ones manufacturing clamps in conformity with these provisions. It does appear that nonlicensees of the plaintiff manufactured hubless pipe conforming to these provisions.

On December 1, 1976, as a result of complaints about the reliability and effectiveness of the hubless cast iron soil pipe system, the board held a public hearing in order, among other things, to review its "approval of the Hubless Cast Iron Soil Pipe System" as reflected in the summarized portions of Section 6 of the code. The hearing was not conducted as an "adjudicatory proceeding" pursuant to G. L. c. 30A, §§ 10, 11, & 13, but as a "legislative" type hearing pursuant to G. L. c. 30A, § 2. At this hearing there was testimony both for and against the board's approval of the use of the hubless system. A major complaint about the hubless system was that the joints between the pipe segments were not strong enough to withstand the pressures sometimes placed upon them when the pipe was installed underground. There was testimony that the joints either gave way completely or developed leaks when the earth in which the pipe was placed settled or when it heaved as a result of freezing and thawing.

---

[7] "300 series" apparently refers to the grade of stainless steel.

[8] The cast iron clamp (see n.5) was not approved for use in Massachusetts by the code.

Another general complaint about the hubless system expressed by some was that both the clamps and the pipe segments were occasionally defectively manufactured. For example, there were complaints that the bolt screws on the clamp, and the threads into which they are tightened, gave way or failed to hold. Finally, there were complaints that the clamps did not remain sufficiently tight.

The supporters of the hubless system, aside from denying the contentions of the opponents, relied heavily upon its low cost — less than the hub and spigot system; they argued that disapproving the hubless system would drive up construction costs and contribute to an exodus of industry from the State.

On May 13, 1977, the board voted "to restrict the use of [the] cast iron soil pipe hubless system on all underground installations." Accordingly, the board drew up an amendment to subparagraph 6.2.6 deleting part (b). After the board obtained the necessary approvals by the Departments of Public Health and Environmental Quality Engineering, that amendment was published and apparently became effective on October 27, 1977.

Also at the May 13 meeting, the board adopted "a guideline for manufacturers who are presently contemplating submitting new couplings to the board for approval for use on the cast iron soil pipe hubless system." The guideline essentially sought a stronger clamp for use above ground. For example, the guideline suggested clamps wider than those previously approved — the greater width increasing the purchase area of the clamp on each pipe segment and thereby increasing the friction holding the joint together. The guideline also suggested that the clamp be thicker and be made of a more corrosion resistant grade of stainless steel.

The board, however, before taking any final action amending subparagraph 6.2.7(c), which approved the use of the hubless system above ground, decided to hold a second public hearing on September 7, 1977. The plaintiff requested that that hearing be conducted as an adjudica-

tory proceeding as defined by G. L. c. 30A, §§ 10-13, on the ground that it was threatened with the divestiture of a valuable property right. The board refused and conducted the hearing as a legislative hearing. At that hearing the opponents of the hubless system contended that clamps conforming to the old code provisions loosened and that leaks occurred when the pipe was subjected to vibration, or when inadequate swaybracing was installed. The opponents again contended that components of the hubless system were defectively manufactured.

The board chairman brought out the facts that the joint could be strengthened either by increasing the clamp's capacity to exert pressure over a particular area or by making the clamp wider so that the pressure exerted by the clamp was distributed over a greater surface area of the two pipe segments; in either case the friction holding the joint together would be increased.

The proponents' major reliance was upon the low cost of the hubless system compared to the traditional bell and spigot system. They again contended that the increased cost of construction in Massachusetts caused by the disapproval of the hubless system would drive business out of the State, hurting its economy.

On October 5, 1977, the board voted to strike subparagraph 6.2.7(c) of the code and to replace it with a new subparagraph 6.2.7(c) permitting the use, above ground, of "[h]ubless cast iron soil pipe and fittings, manufactured in accordance with CISPI Standard No. 301-75, joined with a clamp from a list of approved clamps from the [board] and installed in accordance with CISPI Pamphlet 100 (as revised June 1972)."[9] That amendment was published and became effective on November 17, 1977. At the same October 5, 1977, meeting, the board also voted to "notify all manufacturers of presently approved No-Hub Clamps, that with the exception of Clamp-All,[10] the

---

[9] Once again the parties have given us no guidance as to the content of "CISPI Standard 301-75" or "CISPI Pamphlet 100."

[10] The Clamp-All clamp was a clamp for the hubless system manufactured by a nonlicensee of the plaintiff. Whether the Clamp-All

582                                    8 Mass. App. Ct. 575

Cast Iron Soil Pipe Institute *v.* Board of State Examiners of Plumbers & Gas Fitters.

Board will consider rescinding of their approval of couplings for the No-Hub system at an adjudicatory hearing and that the date for such hearing shall be discussed at their November 2, 1977 meeting." The minutes of the November 2 meeting are not included in the record appendix, but it is apparent that the board determined to forgo any such adjudicatory hearing. Following the November 2 meeting the board's executive secretary wrote the plaintiff that at that meeting the board had voted "to rescind their former approval of all stainless steel couplings manufactured under the specification standard of the hubless cast iron sanitary system with CI no-hub pipe and fittings of the [plaintiff] . . . [t]his action not to become effective until June 1, 1978, during which period . . . it is expected that existing inventories will be depleted." The board approved two clamps for use above ground, including a Clamp-All clamp, whose manufacturers are not licensees of the plaintiff and which apparently do not infringe upon the plaintiff's patent. It is stipulated that these clamps cost more to install than the plaintiff's.

1. The board in adopting the challenged amendments to the code proceeded on the assumption that the procedural prerequisites to its actions were those set forth in G. L. c. 30A, § 2, for the adoption of regulations[11] — namely "notice and public hearing with opportunity for anyone interested to appear and contribute." *Cambridge Elec. Light Co.* v. *Department of Pub. Util.*, 363 Mass. 474, 485 (1973).[12] The plaintiff, however, contends

---

clamp was approved by virtue of meeting the standard already summarized or by virtue of paragraph 6.2.18 allowing the board to approve for use materials not otherwise permitted by the code does not appear.

[11] It is agreed that violations of the code are punishable by fine.

[12] See also Sacks & Curran, Administrative Law, 1954 Ann. Survey Mass. Law 126, 131, in which it is said, "The hearing procedure provided in [G. L. c. 30A, § 2] is left completely flexible. The [State Administrative Procedure Act] imposes none of the formalities required in adjudicatory proceedings . . . ."

that the board should have conducted the two public hearings it held before adoption of the challenged amendments as adjudicatory proceedings pursuant to G. L. c. 30A, §§ 10-14. In such proceedings the plaintiff would have had the right, among others, to cross-examine all witnesses and to call and examine its own witnesses (G. L. c. 30A, § 11[3]), and the board would have been required, among other things, to prepare a written "statement of reasons for [its] decision" (G. L. c. 30A, § 11[8]).

An agency is required to conduct an adjudicatory proceeding when "the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing." G. L. c. 30A, § 1(1). In the present case, there were neither (a) statutory nor (b) constitutional requirements that the board conduct such a hearing.

(a) The parties agree that G. L. c. 142, § 13, which authorizes the board to make and amend the code, contains no hearing requirement. *First Church of Christ, Scientist* v. *Alcoholic Beverages Control Commn.*, 349 Mass. 273, 274 (1965). *Associated Indus.* v. *Commissioner of Ins.*, 356 Mass. 279, 285 (1969). *First Natl. Bank* v. *Board of Bank Incorporation*, 361 Mass. 381, 383 (1972). Contrast *Newton* v. *Department of Pub. Util.*, 339 Mass. 535, 542 (1959); *Bay State Harness Horse Racing & Breeding Assn.* v. *State Racing Commn.*, 342 Mass. 694, 701 (1961). The plaintiff, however, contends that G. L. c. 30A, § 13, which provides that "no agency shall revoke or refuse to renew any license unless it has first afforded the licensee an opportunity for" an adjudicatory hearing, is applicable in the present circumstances, the plaintiff's argument being that subparagraphs 6.2.6(b) and 6.2.7(c), as unamended, constituted licenses within the meaning of G. L. c. 30A, § 13, to its members to sell its clamp in Massachusetts. We disagree.

The first paragraph of G. L. c. 30A, § 13, provides, " 'License,' as used in this section, includes any license, per-

mit, certificate, registration, charter, authority or similar form of permission required by law." The parties agree that subparagraphs 6.2.6(b) and 6.2.7(c), as unamended, were properly adopted pursuant to the board's statutory authority to "make . . . alter, amend, and repeal *rules and regulations* relative to the construction, alteration, repair, and inspection of plumbing" (emphasis supplied). G. L. c. 142, § 13. The two subparagraphs by their terms governed the hubless pipe and fittings, including clamps, which any owner or plumber could use in the construction or installation of plumbing systems; unlike the usual license, it was only indirectly that they affected the clamps which could be sold in Massachusetts. Contrast *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 493, 499, 500-501 (1965); *Pan-Atlantic S.S. Corp.* v. *Atlantic Coast Line R.R.*, 353 U.S. 436, 438-439 (1957); *Joseph E. Seagram & Sons* v. *Dillon*, 344 F.2d 497, 499 & n.3 (D.C. Cir. 1965); *Marathon Oil Co.* v. *EPA*, 564 F.2d 1253, 1264 (9th Cir. 1977); *Seacoast Anti-Pollution League* v. *Costle*, 572 F.2d 872, 874, 880 n.15 (1st Cir.), cert. denied sub nom. *Public Serv. Co.* v. *Seacoast Anti-Pollution League*, 439 U.S. 824 (1978).

That the board in adopting those subparagraphs, as amended, chose to require that the clamps used be a "300 series stainless steel clamp, as conforms to CISPI Standard"[13] does not, as the plaintiff urges, convert those subparagraphs into licenses. In the first place, since the plaintiff, which has the burden of proving that the board's actions were irregular,[14] has not seen fit to introduce in evidence the "CISPI Standard," we cannot be certain whether the "CISPI Standard" simply sets neu-

---

[13] That the subparagraphs were so worded was perhaps a matter of convenience in view of the claim in the plaintiff's brief that the plaintiff "and its members were the hubless industry at the time of the [b]oard's approval."

[14] See *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 301 (1979), and *Grocery Manufacturers of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 81-82 (1979).

tral standards which the clamp must meet and with which any manufacturer so inclined could have complied or whether it specifies that certain of the plaintiff's CI No-Hub clamps be used to join together the pipe segments. See *Aeration Processes, Inc.* v. *Commissioner of Pub. Health,* 346 Mass. 546, 554 n.7 (1963). If the former, the two subparagraphs clearly constitute "regulations" as defined by G. L. c. 30A, § 1(5), rather than licenses, being of "general application and future effect." *Cambridge Elec. Light Co.* v. *Department of Pub. Util.,* 363 Mass. at 486. *Mobil Oil Corp.* v. *FPC,* 469 F.2d 130, 138-139 (D.C. Cir. 1972), cert. denied, 412 U.S. 931 (1973). Contrast *New York Cent. R.R.* v. *Department of Pub. Works,* 354 Mass. 332, 335 (1968).

If the latter is the fact, that still would not convert the subparagraphs into licenses (within the meaning of G. L. c. 30A, § 13) to the plaintiff's members to sell those clamps in Massachusetts.[15] In deciding whether the two subparagraphs should be characterized as constituting "licenses" within the meaning of G. L. c. 30A, § 13, we do not rely on "a mechanical process of categorization," but rather base our decision on the "functional suitability" "to the kind of inquiry upon which the [board] was embarked" of the procedural consequences that follow upon our characterization. See *Cambridge Elec. Light Co.* v. *Department of Pub. Util.,* 363 Mass. at 486, 488. Since the two paragraphs, as we have previously observed, governed the clamps which all owners or plumbers could use in installing plumbing systems in the Commonwealth, not only the plaintiff and its licensees, but all owners and

---

[15] We need not decide whether that fact would take the two subparagraphs, as unamended, outside the scope of the definition of "regulation" contained in G. L. c. 30A, § 1(5). Unlike the Federal Administrative Procedure Act, ours does not define adjudicatory proceeding in terms of what is not a regulatory proceeding. Compare G. L. c. 30A, § 1(1), with 5 U.S.C. § 551(6) & (7). See Sacks & Curran, Administrative Law, 1954 Ann. Survey Mass. Law 126, 135 n.1. See also *Commonwealth* v. *Sisson,* 189 Mass. 247, 250-252 (1905).

plumbers were directly interested parties — an obviously large number which it would be impracticable to include in an adjudicatory proceeding. *Bi-Metallic Co.* v. *Colorado*, 239 U.S. 441, 445-446 (1915). *Anaconda Co.* v. *Ruckelshaus*, 482 F.2d 1301, 1306 (10th Cir. 1973). See Shapiro, The Choice of Rulemaking or Adjudication in the Development of Administrative Policy, 78 Harv. L. Rev. 921, 924, 930 (1965). But, more importantly, the standard governing the board's actions in considering whether to amend the code does not suggest that an adjudicatory proceeding would be appropriate. General Laws c. 142, § 13, requires that the rules and regulations adopted thereunder be "reasonable, uniform and based on generally accepted standards of plumbing practice." We think that at least implicit in this standard is a requirement that the rules and regulations promote the public health, safety, and welfare. See *Newton* v. *Department of Pub. Util.*, 339 Mass. at 546-547. *Bay State Harness Horse Racing & Breeding Assn.* v. *State Racing Commn.*, 342 Mass. at 699. Such a standard thus suggests a political question, one of governmental policy to be decided predominantly upon legislative facts rather than upon adjudicative facts involving particular persons, their business or property, and their relation to a particular transaction. *Natick Trust Co.* v. *Board of Bank Incorporation*, 337 Mass. 615, 617 (1958). *City Bank & Trust Co.* v. *Board of Bank Incorporation*, 346 Mass. 29, 32 (1963). *Dixie's Bar, Inc.* v. *Boston Licensing Bd.*, 357 Mass. 699, 702 (1970). *Reid* v. *Acting Commr. of the Dept. of Community Affairs*, 362 Mass. 136, 142-143 (1972). *Cambridge Elec. Light Co.* v. *Department of Pub. Util.*, 363 Mass. at 487. *Dubois* v. *Selectmen of Dartmouth*, 2 Mass. App. Ct. 674, 677 (1974). *WBEN, Inc.* v. *United States*, 396 F.2d 601, 618 (2d Cir.), cert. denied sub nom. *WBEN, Inc.* v. *FCC*, 393 U.S. 914 (1968). *Washington Util. & Transp. Commn.* v. *FCC*, 513 F.2d 1142, 1160-1161 (9th Cir.), cert. denied sub nom. *National Assn. of Regulatory Util. Commrs.* v. *FCC*, 423 U.S. 836 (1975). *United States* v. *Daniels*, 418 F. Supp. 1074, 1077

(D.S.D. 1976). Contrast *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. at 499; *New York Cent. R.R.* v. *Department of Pub. Works*, 354 Mass. at 335.

As the transcripts of the two hearings on the challenged amendments disclose, the major issue before the board was how strong a clamp must be used in the hubless system for the protection of the public health and safety. A significant consideration was a weighing of the benefits to the public health and safety of a stronger clamp against the adverse effect upon the State's construction industry and economy as a whole of the increased cost of such a clamp — surely a question of "governmental policy peculiarly for the determination of an administrative department." *Natick Trust Co.* v. *Board of Bank Incorporation*, 337 Mass. at 617. That the board was seeking essentially to develop new standards applicable to all manufacturers is shown by the neutral guidelines it adopted for the development of new clamps and by the fact that the two clamps ultimately approved for use pursuant to the new subparagraph 6.2.7(c) are both manufactured by nonlicensees of the plaintiff. To the degree that evidence as to problems that had arisen with previously approved clamps when used in particular construction projects was brought to the attention of the board it was in order "to domesticate or illustrate the general problems, and could not have the effect of transforming the . . . [board's] endeavor into an adjudicatory one." *Cambridge Elec. Light Co.* v. *Department of Pub. Util.*, 363 Mass. at 487.

(b) It follows from what has already been said that there was also no constitutional requirement that an adjudicatory hearing be held. Since the proceeding was legislative or political, a hearing is not essential to due process under the Fourteenth Amendment to the United States Constitution or under art. 10 or art. 12 of the Massachusetts Declaration of Rights. *United States* v. *Florida East Coast R.R.*, 410 U.S. 224, 244-245 (1973). *Hayeck* v. *Metropolitan Dist. Commn.*, 335 Mass. 372, 375

(1957). *Natick Trust Co.* v. *Board of Bank Incorporation,* 337 Mass. at 617. *First Natl. Bank* v. *Board of Bank Incorporation,* 361 Mass. at 383. *Reid* v. *Acting Commr. of the Dept. of Community Affairs,* 362 Mass. at 140. *Cambridge Elec. Light Co.* v. *Department of Pub. Util.,* 363 Mass. at 488. Contrast *Massachusetts Medical Serv.* v. *Commissioner of Ins.,* 344 Mass. 335, 339 (1962). *Milligan* v. *Board of Registration in Pharmacy,* 348 Mass. at 499-501.

That the economic interests of the plaintiff and its licensees may have been adversely affected by the challenged amendments is immaterial. A regulation often increases costs or diminishes business expectations. *Cambridge Elec. Light Co.* v. *Department of Pub. Util.,* 363 Mass. at 488.

(c) The plaintiff also argues that it should have been accorded an adjudicatory proceeding prior to the board's action at its November 2, 1977, meeting which purported "to rescind [its] former approval of all stainless steel couplings manufactured under the specification standard of the hubless cast iron sanitary system with CI no-hub pipe and fittings of the plaintiff . . . [t]his action not to become effective until June 1, 1978, . . . ." When we analyze what the board actually intended to accomplish by this action, it is clear that the plaintiff had no right to the adjudicatory hearing. So far as appears from the record before us the only approval the board ever gave to the plaintiff's CI No-Hub clamp was that reflected in subparagraphs 6.2.6(b) and 6.2.7(c), as unamended, of the code. As we have already seen, the board had, prior to November 2, 1977, effectively rescinded that approval with respect to use under ground by deleting (in a procedurally correct manner) subparagraph 6.2.6(b) permitting use of the hubless system underground, that amendment taking effect October 27, 1977. And, as of November 2, 1977, the board had voted, also in a proceedurally correct manner, to amend subparagraph 6.2.7(c) permitting use of the hubless system above ground, but the amendment had yet to

be published and become effective. It is thus clear that the only issue which could have been before the board at the November 2, 1977, meeting was how and when the provisions of the new subparagraph 6.2.7(c) should take effect. As is obvious from the board's letter to the plaintiff, the decision was to retain in effect the provisions of the old subparagraph 6.2.7(c) concerning clamps until June 1, 1978. If the decision to amend subparagraph 6.2.7(c) did not require an adjudicatory proceeding, neither did the decision as to when to put into effect the provisions of that amendment.

2. The plaintiff contends that neither the evidence at the two public hearings held by the board nor other evidence which the plaintiff alleges was before the board when it adopted the two challenged amendments supported the board's action. The plaintiff's argument incorrectly assumes that the board's action is invalid unless supported by substantial evidence in the record of the proceedings before it. As we have already established, the board's action was legislative or political in nature, rather than adjudicatory. There is no requirement that such action be supported by substantial evidence in the record of the proceedings before the board. See *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 293-294 (1979), and *Grocery Manufacturers of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 79-80, 85 (1979). Contrast *Salisbury Water Supply Co.* v. *Department of Pub. Util.*, 344 Mass. 716, 718 (1962). Rather, the plaintiff must show that the board's action "crossed 'the line of arbitrariness' or was 'capricious'" (*Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. at 293), and all rational inferences will be drawn in favor of the board's action. *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 541 (1974). We cannot say that the trial judge was clearly in error (Mass.R.Civ.P. 52(a), 365 Mass. 816 [1974]) in finding that the plaintiff had failed to meet that heavy burden. *Grocery Manufacturers of America, Inc.* v. *Department of Pub. Health*, 379 Mass. at 85.

*Judgment affirmed.*