Burnes, J.
Plaintiff and class representative, Florence DiBiase, (“DiBiase”) commenced this action against defendant Savings Bank Life Insurance Co. (SBLIC) and defendants Commonwealth of Massachusetts and the Commissioner of Insurance (collectively, state defendants) on August 30, 1996. DiBiase claims that actions taken by the state defendants and the SBLIC in connection with the repeal of G.L.c. 178, deprived her, along with all those who purchased and held life insurance policies under the prior Savings Bank Life Insurance system, of property rights without the due process of law, impaired their contracts of insurance and effected a taking of their property without just compensation under both federal and state law. DiBiase alleges the same claims, under 42 U.S.C. §1983, against the SBLIC and the Commissioner. DiBiase seeks declaratory and injunctive relief against all defendants. Against the SBLIC, DiBiase seeks compensatory damages in the amount of the value of the property allegedly appropriated.
All defendants move to dismiss the claims in DiBiase’s First Amended Complaint as being barred by the statute of limitations. The SBLIC and the Commissioner also move to dismiss all claims brought under 42 U.S.C. §1983, on grounds that such claims do not lie against these defendants. DiBiase opposes the defendants’ motions.
DiBiase moved for summary judgment on Count 3 (deprivation of property rights without the due process of law) of her complaint. All defendants oppose that motion.
For the reasons set forth below, this Court enters summary judgment in favor of all defendants, on all counts of DiBiase’s complaint.
BACKGROUND
The facts as alleged by the plaintiff are as follows:
The Savings Bank Life Insurance system was designed and adopted in 1907 to provide life insurance and annuities to citizens of the Commonwealth. G.L.c. 178 (now repealed). Any savings bank could establish a separate insurance department which would then hold and invest assets to secure and support the policies issued by it. Each department was required to maintain adequate policy reserves and a statutory surplus (10% or less of these reserves). Revenue received by the departments was first to be used to pay losses and maintain the permitted reserves and surplus. The statute required that the balance of the revenue be turned over to the policyholders as policyholder dividends. The statute also provided for the creation and maintenance of the General Insurance Guaranty Fund (GIGF), a guaranty fund to back the obligations of the insurance departments. The GIGF was funded by a percentage of premiums collected by the insurance departments. In essence, the plan established by G.L.c. 178 was atype of mutual insurance system.
DiBiase has been a SBLIC policyholder since March 1937. In fact, she holds a total of three SBLI policies.
In 1990, the Massachusetts General Court enacted c. 499 of the Acts of 1990 (codified in G.L.c. 178A) which repealed the then existing G.L.c. 178 (the SBLI system at issue in this case). The enactment of G.L.c. 178A (the act) changed the SBLI in many respects. The act “established a domestic stock life insurance company to be known as the Savings Bank Life Insurance Company of Massachusetts . . .” G.L.c. 178A, §2. Within forty-five days of its establishment, SBLIC was required to submit to the Commissioner of Insurance “a plan pursuant to which the company shall assume the ownership and operation of the insurance department of each savings and insurance bank.” (Plan of Assumption.) Id. The stockholders of SBLIC were the same savings banks that had participated in the previous system. The new statute directed that the SBLIC within a period of up to twelve years distribute to those who were policyholders on the date of conversion an amount equal to the surplus transferred to SBLIC. G.L.c. 178A, §5. How the surplus was calculated is set out in G.L. 178A, §1. Because of the time over which payments were to be made, the effect of this arrangement, claims DiBiase, was to transfer 40% of the surplus to the shareholder banks.
Furthermore, G.L.c. 178A also provided that “[t]he amount of surplus so distributed shall be considered as an expense in determining the net profits of the company.” In each of the twelve years in which some of the surplus is paid to the policyholders, those payments are treated as an expense against SBLIC’s *641 income, which, in turn and in effect, reduces SBLIC’s net profits ultimately owed to the policyholders. Thus, the regular annual dividends paid to the policyholders are reduced because of the reduction in net profits effected by expensing the payments of the surplus, with the net effect, again says DiBiase, of no payments at all of surplus to the policy-holders. The Legislature also abolished the GIGF, containing $11 million, using the funds for other programs operated by the Commonwealth.
The statute required the Commissioner to review and approve the SBLIC’s proposed Plan of Assumption. As required by the statute, prior to approval, the Commissioner provided public notice of the contents of the plan and held a public hearing. The Commissioner provided a summary of the plan in the public notice. The notice was provided by mail to the participating banks and by 14 day newspaper notice to the general public. There was no requirement that notice of any sort be sent to the policyholders. G.L.c. 178A, §6.
The public notice of the proposed change provided by the Commissioner during June 1991 stated as follows:
1. As of the close of business on December 31,1991, (the date of conversion) the Company will assume the assets and liabilities of the Savings Bank Life Insurance Departments of 56 savings banks which have been authorized to underwrite Savings Bank Life Insurance in Massachusetts. The Company will, at that time, also assume all existing Savings Bank Life Insurance policies issued by such banks.
2. In exchange for transferring such assets, shares of Company stock will be issued to such banks . . .
6. Individual Savings Bank Life insurance policyholders with policies in force as of the date of conversion will be entitled to a distribution of the entire statutory surplus of the Company.
7. The surplus will be paid to such policyholders in the form of additional annual dividends over a period of not less than 8 and not more than 12 years.
8. In the year following the final payment of surplus, such policyholders will receive an additional payment of interest on the total surplus distributed.
9. The present value of the unpaid surplus payable to any eligible policyholder that dies within the 12 year payment period shall be paid to the policy’s beneficiary.
The statute further provided that, upon approval, the Commissioner issue to the SBLIC a certificate required for the issuing of insurance policies to be effective “as of the close of business on December thirty-first, nineteen hundred and ninety-one.” G.L.c. 178A, §6. The statute defined such date as the date of conversion from the savings bank life insurance system of G.L.c. 178 to the new system of G.L.c. 178A.
A public hearing regarding the Plan of Assumption was held in July 1991. The Commissioner approved SBLIC’s proposed Plan of Assumption and issued the requisite certificate in December 1991. Accordingly, as of the close of business on December 31, 1991, SBLIC assumed the ownership and operation of the policies and the repeal of G.L.c. 178 became fully effective.
On December 27, 1991, DiBiase received a letter by mail which was addressed to “All SBLI Policyholders” and signed by the Deputy Commissioner, Division of SBLI and President of SBLIC. The letter informed the addressees of the change in the SBLI policies, that they would be getting an “extra dividend representing a payout of surplus made excess by the merger . . . ,” and that “[t]he General Insurance Guaranty Fund .. . and the underwriting functions of the various SBLI departments . . . will discontinue operations as of the close of business on December 31, 1991.” (Pizzella letter, at 2.) The letter did not explicitly state that there would be a 40% reduction in surplus or a reduction in net profits which would affect the “additional annual dividends”; it did explicitly inform DiBiase that the GIGF was being dissolved.
DISCUSSION
The defendants have filed motions to dismiss under Mass.R.Civ.P. 12(b)(6).[2] DiBiase has opposed those motions.and filed its own cross motion for summary judgment on count three of DiBiase’s complaint. DiBiase has submitted affidavits in support of its motion for summary judgment. Because the court considered those affidavits and their attachments, the submission of which was not objected to by the defendants, the court considers the claims on summary judgment. Mass.R.Civ.P. 12(b)(6) (when matters outside the pleadings are submitted and not excluded by the court, a motion to dismiss shall be treated as a motion for summary judgment); Stop & Shop Cos. v. Fisher, 387 Mass. 889, 892 (1983).
This court grants summary judgment where there' are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17. Summary judgment, where appropriate, maybe entered against the moving party. Community Nat’l Bank v. Dawes, 369 Mass. at 553 (1976).
The defendants argue that DiBiase’s claims accrued, at the latest, on December 31, 1991, when the new statute became fully effective, that the proper *642 statute of limitations is three years and that, therefore, DiBiase’s claims brought in 1996 are untimely. DiBiase responds, in essence, that her claims did not accrue until she had actual knowledge of the impact of the legislation on her property rights, because she did not receive constitutionally adequate notice of the change in the statutory scheme and because the defendants had a duty to, but did not, inform her fully of the impact of the legislation on her.
DiBiase is bringing direct claims under the United States and Massachusetts Constitutions and derivatively via 42 U.S.C. §1983.[3] None of these contain statute of limitations. The determination of which statute of limitations to apply in a given case, in the absence of statutory direction, is “controlled by the essential nature of the party’s claim.” Royal-Globe Ins. Co. v. Craven, 411 Mass. 629, 636 (1992). All of DiBiase’s claims, whether asserted pursuant to 42 U.S.C. §1983 or directly under the Federal and Massachusetts Constitutions, sound in tort.[4] Such claims are governed by G.L.c. 260, §2A. Furthermore, G.L.c. 260, §2A applies to §1983 suits. Gilbert v. City of Cambridge, 932 F.2d 51, 57 (1st Cir.), cert. den., 502 U.S. 866 (1991); Pagliuca v. City of Boston, 35 Mass.App.Ct. 820, 822 (1994). There is no reason to treat the direct constitutional claims differently. See, e.g., Bieneman v. City of Chicago, 864 F.2d 463, 469 (7th Cir. 1988), cert. den., 490 U.S. 1080(1989) (no reason to have a different statute of limitations for direct constitutional claims); Steinberg v. City of Cambridge, 413 Mass. 736, 738 (1992), cert. den. 508 U.S. 909 (1993) (due process and taking claims under the state constitution should be reviewed by same standards as those brought under the federal constitution). Therefore, for all DiBiase’s claims, the applicable statute of limitations, is G.L.c. 260, §2A, or three years from the time the action accrued.
A claim accrues “when a plaintiff knows, or has reason to know, of the... act that underpins his cause of action." Morris v. Government Dev. Bank of P.R., 27 F.3d 746, 748-49 (1st Cir. 1994). If the plaintiff has knowledge of the facts which form the basis of her cause of action, the claim accrues. Jensen v. Snellings, 841 F.2d 600, 606 (5th Cir. 1988), quoting Vigman v. Community Nat’l Bank & Trust Co., 635 F.2d 455, 459-60 (5th Cir. 1981) (“The requisite knowledge that a plaintiff must have to begin the running of the limitations period is merely that of ‘the facts forming the basis of his cause of action,’ . . . not that of the existence of the cause of action itself.’ ” (emphasis added)). “[N]otice of facts which would incite a person of reasonable prudence to an inquiiy under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop. Indeed, aparty may not ‘shut his eyes to the means of knowledge which he knows are at hand, and thereby escape the consequences which would flow from the notice if it had actually been received.’ ” Commonwealth v. Delaney, 425 Mass. 587, 592 (1997) (internal citations omitted).
In this case, the act which DiBiase claims is the basis of her suit is the repeal of G.L.c. 178 and the enactment of G.L.c. 178A, the statutory change which affected her rights in the surplus and profits and GIGF. As a matter of law, “ [a]ll citizens are presumptively charged with knowledge of the law.” Atkins v. Parker, 472 U.S. 115, 130 (1985); Anderson Nat’l bank v. Luckett, 321 U.S. 233, 243 (1944). See also Texaco, Inc. v. Short, 454 U.S. 516, 532 (1982) (“It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property”).
It follows, then, that DiBiase is charged with the knowledge of the enactment of G.L.c. 178A and the repeal of G.L.c. 178, the very statutes which specifically regulate the property over which she now battles. The statute explicitly stated that December 31, 1991, was the date of conversion of the insurance system. At that point, at the latest, DiBiase had reason to know and should have known of the legislation which, according to DiBiase, so significantly affected her valuable property rights.
DiBiase claims that, because the enactment of G.L.c. 178A effected a deprivation of valuable property rights that affected only her and other policyholders and not the public irr general, she and members of the class, whose addresses were known, should have been afforded personal, by mail or other comparable notice of the public hearing following passage of the legislation but prior to its effective date. She cites Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) in support. That is not the rule of Mullane. Mullane held, in part, that known beneficiaries of a statutory common trust fund were entitled to personal or by mail notice of a hearing regarding the judicial settlement of accounts of the common trust fund. Id. at 314. In this case, although property rights are at issue, the proceeding which affected those rights was not a judicial settlement or even the public hearing of which DiBiase claims she was entitled to individualized notice. What affected her property rights, if any, was the passage of the legislation, about which — at the risk of being redundant — all citizens are deemed to have knowledge. The rule proposed by DiBiase — that because she held a property interest in the subject of the legislation (G.L.c. 178A), she was entitled to something more than the notice presumed to have been given to every other citizen — would charge the legislature with providing notice of hearings to groups of individuals claiming a property interest in the subject of legislation every time a public hearing was held or legislation became effective. Not only is this an unrealistic and unmanageable rule, it is not the law. Texaco, Inc. v. Short, 454 U.S. at 531-35 (no individual *643 notice required for statutory lapse of mineral interests).
Furthermore, and perhaps most importantly, state legislative acts are generally not subject to procedural due process challenges. Liability Investigative Fund Effort, Inc. v. Massachusetts Med. Prof'l. Ins. Assn., 418 Mass. 436, 444, cert. den., 115 S.Ct. 666 (1994). This “rule applies specifically to legislative changes in benefits." Id., citing Atkins v. Parker, 472 U.S. 115, 129 (1985). There is no reason to think the rule would be different in this case.
DiBiase seeks to escape the rule of Texaco by arguing, first, that the July 1991 hearing was adjudicatory, entitling her to Mullane notice, and, second, that the enactment of the statute in 1990 was a taking, citing various eminent domain cases. The court is not persuaded by either argument. ,
The July 1991 hearing was not adjudicatory. An adjudicatory hearing generally deals with individual deprivations — the who, what, where, when, why, and how of an individual’s situation. 2 Davis & Pierce, Admin. Law Treatise §9.2 at 7 (3rd 1994); Londoner v. Denver, 210 U.S. 373 (1908); Bi-Mettalic Inv. Co. v. State Board of Equalization, 239 U.S. 441 (1515); Cambridge Electric Light Co. v. Department of Public Utilities, 363 Mass. 474, 485-89 (1973); Reid v. Acting Comm’r of the Dep’t of Community Affairs, 362 Mass. 136 (1972); Cast Iron Soil Pipe Institute v. Board of State Exam’rs of Plumbers & Gas Fitters, 8 Mass.App.Ct. 575, 586 (1979). The subject of the July 1991 hearing was whether the proposed Plan of Assumption conformed to the legislative mandates in G.L.c. 178A, §6, not the effect of this statute on DiBiase’s policy. The fact that the statute allowed judicial review of some aspects of this plan approval process — specifically, if the amount of the surplus was changed or if the Commissioner refused to approve the Plan — does not change the analysis. DiBiase’s property rights, if any, were not the subject of that hearing.
Second, the eminent domain argument is inapposite. DiBiase argues that the passage of the statute constituted a taking similar to an eminent domain taking. The problem with this argument is two-fold. First, it ignores Texaco (statutory lapse of mineral rights held not to require Mullane notice). Second, it ignores the distinction between statutes which effect a taking (this statute, if there is a property right) and statutes which establish general procedures for takings but do not, in and of themselves, effect the taking. See, e.g., Schroeder v. City of New York, 371 U.S. 208 (1962) (authorizing condemnation and appraisal proceedings). The former type does not require individualized notice; the latter does,
DiBiase argues that even if she were not entitled to any more notice than any other citizen of the change in the law, the statute of limitations was tolled under G.L.c. 260, §12 because the newspaper publication noticing the public hearing and the letter from the SBLIC fraudulently concealed facts which would have led one in her position to inquire further. In particular, Dibiase claims that both the newspaper announcement and the letter lulled her into inaction because they implied that although a change in the insurance system had taken place, it would not affect her rights and those of others in her position.
Neither the letter nor the newspaper notice could have lulled DiBiase into believing that her rights would not be affected by the law: the newspaper announcement notified the policyholders that a significant change in the law would be affecting their policies and that they would be receiving their share of the surplus over a period of twelve years. The letter explicitly stated that there would be a fundamental change in the structure of the savings bank life insurance program. Specifically, the letter identified a change in the payment of dividends and that the GIGF was to be entirely dissolved. The letter, coupled with the information presented in the newspaper announcement, provided DiBiase with enough information regarding the law to lead her to inquire about the effect of the law on her property. See Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 521 n. 27 (1997); Brackett v. Perry, 201 Mass. 502, 505 (1909).
It is quite true that these notices did not reveal the impact of the statute of which DiBiase complains: that from the beginning she would be deprived of a percentage of the value of the surplus and that the effect of expensing the payment of the remainder of the surplus would be to deprive her of the rest of the surplus. Nevertheless, even a plaintiff who is seeking to have the statute of limitations tolled, alleging fraudulent concealment of the facts underlying her claim, has a duty to make reasonable inquiry. Protective Life Insurance Company v. Sullivan, 425 Mass. 615, 631 (1997). Where a party has the “means of detecting” her cause of action in a situation where she has been put on notice that her rights may be affected, the efforts of the defendant to conceal the facts are not a defense. Brackett at 505. Knowledge of the facts and circumstances underlying the claim will be imputed to the claimant. Demoulas at 521, n.27. Or said another way, full means of detecting the fraud is the equivalent of actual knowledge. Id. As a matter of law, there can be no fraudulent concealment in these circumstances.[5]
ORDER
For the foregoing reasons, the Court orders that summary judgment be entered in favor of all defendants and all counts of the plaintiffs complaint be dismissed.

 DiBiase argues that a motion to dismiss is not available on a claim for declaratory relief, citing Connery v. Comm’r of Correction, which stated that “ [i]n an action for declaratory relief, even where the plaintiff is not entitled to the relief he seeks, the court ought to declare the rights of the parties.” 33 Mass.App.Ct. 253, 254 n. 4 (1992), citing Gennari v. Revere, *644 23 Mass.App.Ct. 979, 980 (1987), citing Mayor of Salem v. Warner Amex Cable Communications Inc., 392 Mass. 663, 669 (1984). However, in all the cases where this rule is applied, the moving party based its motion to dismiss on the merits, not on procedural grounds such as the statute of limitations. See Mayor of Salem v. Warner Amex Cable Communications, Inc., 392 Mass. at 669; Attorney General v. Kenco Optics, Inc., 369 Mass. 412, 418 (1976) (“When an action for declaratory relief is properly brought and relief is denied on the merits, the action should not be dismissed.... [citation omitted). The rights of the parties should be declared.” [emphasis added]). The court thus concludes that it may decide a motion to dismiss in an action for declaratory relief when the motion is based on procedural grounds, and not on the merits of the declaration sought.

 All of DiBiase’s arguments are premised on her having a property right in the surplus and the GIGF. For purposes of this opinion, the court will assume she does, although it seems highly unlikely. See Opinion of the Justices, 401 Mass. 1211, 1232 (1987).

 DiBiase claims that the six year breach of contract statute of limitations should apply to the impairment of contract claim because “[a] contract impairment is most closely analogous to a contract breach.” (Plaintiffs Memorandum in Opposition to Defendant’s Motion to Dismiss, at 13.) DiBiase has not provided any authority for her assertion. Nor have the defendants cited any case for the proposition that a claim of contract impairment is more closely analogous to a tort. The essence of Dibiase’s claim, however, is that the defendants have interfered with her rights under the contract of insurance to receive the benefit of the GIGF, to the distribution of the surplus and to the payment of dividends. Therefore, this Court concludes that the “impairment of contract” claim is most closely analogous to an “interference with contract" claim, a tort, to which the three year statute of limitations applies.

 These rules do not pertain where the defendant is in a fiduciary relationship with the claimant and, by virtue of that relationship, has an affirmative duly to disclose certain facts. Puritan Med. Ctr, Inc. v. Cashman, 413 Mass. 167, 176 (1990); Samia v. Central Oil Co. of Worcester, 339 Mass. 101, 113 (1959) (“mere failure to reveal may be fraudulent where there is a duty to reveal”). Not surprisingly, DiBiase makes just such a claim. Plaintiffs Opposition at 10-11. Unfortunately for DiBiase, this argument cannot succeed. The relationship between insured and insurer is contractual. As such, the insurer is not a fiduciary for the insured. See, e.g., Rochester Radiology Assoc., P.C. v. Aetna Life Ins. Co., 616 F.Supp. 985 (W.D.N.Y. 1985).